MOORE, J.
 

 [tA grand jury indicted the defendant, Franklin C. Redfearn, for aggravated rape' (La. R.S. 14:42) and aggravated incest (La. R.S. 14:78.1). After trial, the jury returned a responsive verdict to the rape charge of guilty of sexual battery (La. R.S. 14:43.1) and a guilty verdict on the aggravated incest charge. The court sentenced Redfearn to concurrent terras of 40 years for sexual battery, including 30 years without benefits and 25 years without benefits for aggravated incest. The defendant filed this appeal claiming insufficient evidence to convict, excessive sentences, and the erroneous failure to sustain one of his challenges for cause.
 

 Our initial review of the record indicated a possible double jeopardy issue on the face of the record. Accordingly, we issued an order directing the state and counsel for Redfearn to submit briefs regarding whether the instant convictions constitute a violation against double jeopardy, whether it constitutes error patent, and what remedy is appropriate. The parties timely submitted their briefs.
 

 After review of all issues, we affirm the convictions and sentences.
 

 FACTS
 

 After the Redfearn family returned home from a boat outing on a nearby lake, Redfearn, asked his wife, Stacey, to prepare something to eat. Meanwhile, he and the three children went into the master bedroom to watch television. While she was preparing the meal, Stacey noticed that the house had become unusually quiet. She went to the master bedroom door, which was closed. When she opened the door, she saw her husband on top of their five-year-old daughter under the bed sheets. Redfearn immediately 12slipped off the girl and kept his back turned to the mother, as she pulled the top sheet off and discovered that both he and the child were naked. The child was on her back with her legs open. Redfearn left the room.
 

 Stacey asked her daughter what happened. The daughter mimicked the movement of sexual intercourse. One of their sons said that their father was doing something nasty.
 

 Stacey confronted the defendant in their living room; he claimed that nothing had occurred. After an argument, she left the home with the children and sought help from a family friend, who put her in touch with the authorities. A forensic interviewer subsequently interviewed the children. The child was also medically examined.
 

 Police subsequently arrested Redfearn, and he was indicted by a grand jury for aggravated rape and aggravated incest. After trial by jury, the applicant was convicted of sexual battery and aggravated incest.
 

 This appeal followed.
 

 Discussion
 

 Sufficiency of Evidence
 

 By his first assignment of error, Red-fearn argues that the state failed to present sufficient evidence to support the verdicts of sexual battery and aggravated incest. He contends that there are internal contradictions and irreconcilable conflicts in the evidence and no physical evidence supporting either of the verdicts
 
 *1083
 
 other than minor abrasions of the victim’s vagina. He argues that the latter could have been caused by the victim’s life jacket that she wore during a trip to the lake earlier in the day. The sole basis of the ^state’s case, he argues, was the testimony of the victim’s mother, the victim and her two brothers. Finally, Redfearn contends that there was no evidence of any prior disharmony in the family, sexually inappropriate behavior or criminal acts on the part of the defendant. Thus, he contends that the testimony is suspicious enough to raise reasonable doubt concerning his guilt of sexual battery and aggravated incest.
 

 The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
 
 Jackson v. Virginia,
 
 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979);
 
 State v. Tate,
 
 01-1658 (La.5/20/03), 851 So.2d 921,
 
 cert. denied,
 
 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004). This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder.
 
 State v. Pigford,
 
 05-0477 (La.2/22/06), 922 So.2d 517;
 
 State v. Robertson,
 
 96-1048 (La.10/4/96), 680 So.2d 1165. The appellate court does not assess the credibility of witnesses or reweigh evidence.
 
 State v. Smith,
 
 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury decision to accept or reject the testimony of a witness in whole or in part.
 
 State v. Gilliam,
 
 36,118 (La.App. 2 Cir. 8/30/02), 827 So.2d 508,
 
 writ denied,
 
 2002-3090 (La.11/14/03), 858 So.2d 422.
 

 14Thus, in order for the defendant’s convictions to be upheld, the record must establish that the State proved beyond a reasonable doubt all the essential elements of sexual battery and aggravated incest.
 

 La. R.S. 14:42.1 defines sexual battery as follows:
 

 A. Sexual battery is the intentional engaging in any of the following acts with another person where the offender acts without the consent of the victim, or where the act is consensual but the other person, who is not the spouse of the offender, has not yet attained fifteen years of age and is at least three years younger than the offender:
 

 (1) The touching of the anus or genitals of the victim by the offender using any instrumentality or any part of the body of the offender; or
 

 (2) The touching of the anus or genitals of the offender by the victim using any instrumentality or any part of the body of the victim.
 

 B. Lack of knowledge of the victim’s age shall not be a defense. However, where the victim is under seventeen, normal medical treatment or normal sanitary care of an infant shall not be construed as an offense under the provisions of this Section.
 

 La. R.S. 14:78.1 defines aggravated incest as follows:
 

 A. Aggravated incest is the engaging in any prohibited act enumerated in Subsection B with a person who is under eighteen years of age and who is known to the offender to be related to the offender as any of the following biological, step, or adoptive relatives: child, grandchild of any degree, brother, sister, half-brother, half-sister, uncle, aunt, nephew, or niece.
 

 B. The following are prohibited acts under this Section:
 

 
 *1084
 
 (1) Sexual intercourse, sexual battery, second degree sexual battery, carnal knowledge of a juvenile, indecent behavior with juveniles, pornography involving juveniles, molestation of a juvenile, crime against nature, cruelty to juveniles, parent enticing a child into prostitution, or any other involvement of a child in sexual activity constituting a crime under the laws of this state.
 

 |fi(2) Any lewd fondling or touching of the person of either the child or the offender, done or submitted to with the intent to arouse or to satisfy the sexual desires of either the child, the offender, or both.
 

 C. Consent is not a defense under this Section.
 

 Trial Evidence
 

 Stacey Redfearn, the defendant’s wife, testified that the victim was born to them on October 23, 2001, making her five years old at the time of the offense.
 

 Stacey testified that after attending church and having lunch with her parents, she met her husband for a day of boating. When she met her husband, she noticed that his speech was slightly slurred and that he had a frozen drink in the cup holder. She testified that he took prescription drugs, Xanax and Lortab, for nerves and back pain. Returning home that evening, the victim rode with her mother, and the two other children, boys older than the victim, rode home with their father.
 

 Once home, at Redfearn’s, Stacey began cooking something to eat. Although she heard her daughter say “Daddy, you are naked,” she thought nothing of it, because nudity was not unusual in the household. After 15 minutes or so, when her house became noticeably quiet, she went to the bedroom and opened the closed door to find her husband lying on top of the five-year old. She pulled the covers off them and discovered that both were naked. She asked what was going on while the defendant pulled away from the child, covered himself and left the room. Stacey stated that the girl “moved her pelvic back and forth,” and she demonstrated this movement to the jury. She had also noticed redness in the girl’s genital area. When she | (¡asked the boys what had happened, the older, eight-year old boy stated: “He was doing something nasty.”
 

 Stacey confronted her husband in the living room; he was still naked and she touched his penis, which was wet. She testified that he had had time to wash himself. The couple argued; when Stacey threatened to leave with the children, the defendant threatened “I’ll kill you before you leave.”
 

 Redfearn then placed the victim in Stacey’s lap, saying, “Tell mama that daddy didn’t do anything.” The victim was crying and shook her head; as Redfearn walked down the hallway, the victim told Stacey in tears, “I told him that it burned.” Redfearn then left the house. According to the victim, he said he was going to see his cousin where “the cops can’t — no cops can’t find us.”
 

 Jessica Bryant, a forensic interviewer with the Children’s Advocacy Center, testified about her qualifications and training, about the process of interviewing children, and about her interviews with the Red-fearn children. Her testimony supported the admission of the DVD recordings of the interviews of the children.
 

 The trial court had previously determined that the children were competent witnesses and the forensic interviews were played for the jury. All three children testified in an adjoining room outside the presence of the defendant and the jury, and then shown in court via closed circuit
 
 *1085
 
 telecast. One of Redfearn’s attorneys was in the room with the children and one in the courtroom. The children were questioned by the state and cross-examined by counsel.
 

 |7The victim testified that both she and her father were naked while they were in bed together. She testified that her daddy’s “weenie” was sticking up. She described it as slippery and thought that he had soap on it. She stated that the defendant had touched her “private” with it and it hurt. More specifically, she said it burned. She said it hurt “inside and stuff.” She also stated that he touched her genitals with his finger. She stated that while this was happening, her brothers looked under the covers. She also stated that she tried to push her father off and called for her mother.
 

 The victim’s nine-year-old brother, G.R., testified that he and his brother were also in the room with the their father and sister. He stated that he looked under the sheet twice. He saw his father “rubbing” his “weenie” while his sister was lying on top of him. He saw his father “rubbing” his “weenie” on his sister’s “booty,” and he was “kind of wiggling” his body. GR stated that his father was talking “weird” earlier that day, and he attributed it to drinking. He said his father had never talked like that before and had never before done what he did to his sister that day.
 

 P.R., the victim’s eight-year-old brother, testified that he was in his parents’ bed along with his brother, sister and father. He said he looked under the sheets five times, and the last time he looked, he saw his father “rubbing” his “private” on his “sister’s private.” He described the motion as “going up and down.” He said he was the last (of the two boys) to look under the covers, and he saw his father on top of his sister. He heard his sister call “mama.” About five minutes later, he said, his mother came in.
 

 |RThe testimony of police detective Darryl Foster and forensic evidence analyst Lauren Arihood elaborated on the course of the investigation. Arihood testified that no blood was found on the bed in which the crimes occurred, and the presence of bodily fluids or DNA evidence on the bed sheets would not have been unusual (or probative of anything) since the defendant and his wife had sexual relations in the bed the night before the incident.
 

 Dr. Meade O’Boyle, a physician and expert in the field of child sexual abuse, testified that after a colposcopic examination of the child, she determined that, although the victim’s hymen was intact, there were abrasions in the posterior four-chette (the area between the vagina and the anus) and in the area of the hymenal ring. These abrasions are inside the labia.
 

 Redfearn testified in his own defense. He admitted to using prescription Xanax for his nerves, Lortab for neck and back pain due to an injury, and to drinking a Margarita or two while boating on the day of the incident. He testified that his wife merely saw him moving the child off of his chest, where she had gone to sleep, and misinterpreted his actions. He believed that the cause of the child’s redness in her vaginal area was the new life jacket that she had worn that day at the lake. He denied that he did anything inappropriate with his daughter and he specifically denied the truth of the testimony of the children that his penis was erect while they were in the bed.
 

 |9To obtain a conviction for sexual battery, the state was required to prove that the defendant intentionally touched the victim’s anus or genitals with an instrument or any part of his body or that the victim touched his anus or genitals with an instrument or any part of her
 
 *1086
 
 body. The act must be performed without the victim’s consent, or that the victim was under the age of 15 and at least 3 years younger than the offender. The statute also requires that the victim cannot be the offender’s spouse.
 

 Our review of the trial evidence above shows that these elements were clearly proven. Stacey Redfearn’s testimony established the age of the victim and that the victim was not the defendant’s spouse. She also witnessed what appeared to be very inappropriate behavior in the master bedroom. Both the trial testimony and forensic interviews clearly establish that the defendant was engaged in touching the victim’s vaginal area with his finger and with his penis. Dr. Meade O’Boyle’s examination was consistent with sexual activity on the child. We conclude that the evidence was sufficient beyond a reasonable doubt to sustain the conviction for sexual battery.
 

 To obtain a conviction for aggravated incest as defined above, the state was required to prove that the defendant engaged in at least one of the listed prohibited sexual acts with a relative under the age of 18 (in this case, under age 13) who he knew was related to him by blood, marriage or adoption. The relative must be either a child, grandchild, brother, sister, whole or half, or an uncle, aunt, nephew or niece. The indictment also charged that the victim was under age 13 to bring the prosecution within |1ftthat part of the statute that imposes a more severe penalty when the victim is under the age of 13.
 

 There is no dispute regarding the biological parent-child relationship of the defendant and the victim, and the victim was age five. The evidence is clearly sufficient in this regard.
 

 Regarding the “prohibited act” requirement of aggravated incest, in this instance, the indictment charged the defendant with engaging in each of the listed prohibited acts under the statute except “sexual intercourse.” La. C. Cr. P. art. 480 permits such conjunctive charging “when an offense may be committed by doing one or more of several acts.” “[Pjroof of any one of the acts ... will support a conviction.”
 
 Id.
 
 However, in its jury instructions, the court specifically defined only the prohibited acts of sexual battery, molestation of a juvenile, and indecent behavior with juveniles, and these were given by reference to the court’s prior definitions of these crimes when listing the responsive verdicts to aggravated rape. Therefore, the prohibited acts for the aggravated incest conviction in this case involved one or more of these three prohibited acts.
 

 We have already concluded that the evidence was sufficient to support the sexual battery conviction arising out of this incident; however, the state contends that the prohibited act for which the defendant was convicted of aggravated incest was the additional evidence of either molestation of a juvenile or indecent behavior with juveniles.
 

 Molestation of a juvenile is defined in La. R.S. 14:81.2(A). Under this statute, the state must prove beyond a reasonable doubt that: (ljjndefendant was over the age of seventeen; (2) the accused committed a lewd or lascivious act upon the person or in the presence of a child under the age of seventeen; (3) the accused was more than two years older than the victim; (4) the accused had the specific intent to arouse or gratify either the child’s sexual desires or his own sexual desires; and (5) the accused committed the lewd or lascivious act by use of force, violence, duress, menace, psychological intimidation, threat of great bodily harm, or by the use of influence by virtue of a position of control or supervision over the juvenile.
 
 State v.
 
 
 *1087
 

 Leblanc,
 
 506 So.2d 1197 (La.1987);
 
 State v. Ellis,
 
 38,740 (La.App. 2 Cir. 8/18/04), 880 So.2d 214.
 

 A “lewd or lascivious act,” for purposes of molestation of a juvenile, is one which tends to excite lust and to deprave morals with respect to sexual relations and which is obscene, indecent, and related to sexual impurity or incontinence carried on in wanton manner.
 
 State v. Holstead,
 
 354 So.2d 493 (La.1977);
 
 State v. Cloud,
 
 2006-877 (La.App. 3 Cir. 12/13/06), 946 So.2d 265,
 
 writ denied,
 
 2007-0086 (La.9/21/07), 964 So.2d 331. This definition aptly describes the defendant’s conduct: he entered the bed with his daughter and sons, all of whom were naked. All of the children indicated that the defendant’s penis was erect, i.e., “sticking up.” The interview and testimony of the older boy, G.R., and the victim herself is consistent with Redfearn masturbating himself and rubbing his penis on the child’s buttocks and genitals and trying to achieve penetration. Furthermore, the victim stated that she saw what she thought was soap on the defendant’s penis because it was “slippery” and described it as having a | [2bubble on it and it popped and then went down. These descriptions are indicative of sexual arousal and prove an “intent to arouse or to satisfy the sexual desires of ... the offender.”
 

 Finally, we conclude that there was sufficient evidence to show that the defendant both used force and his position as the child’s father to commit the lewd and lascivious offenses against his daughter. The victim testified that she tried to push her father off and called for her mother. This testimony was corroborated by the younger sibling. Also, one of the boys testified that he was afraid to go and tell his mother what was happening at the time.
 

 If the evidence was sufficient to show beyond a reasonable doubt that the defendant engaged in molestation of a juvenile, then the evidence was sufficient to show that he committed the prohibited act of indecent behavior with a juvenile. La. R.S. 14:81(A) provides that in order to convict a defendant of indecent behavior with a juvenile, the state must prove that the defendant: (1) committed any lewd or lascivious act; (2) upon the person or in the presence of; (3) any child under the age of 17; (4) was over the age of 17 and more than 2 years older than the victim; and (5) had the intention of arousing or gratifying the sexual desires of either person.
 
 State v. Jones,
 
 34,863 (La.App. 2 Cir. 8/22/01), 794 So.2d 107,
 
 writ denied,
 
 2001-2648 (La.8/30/02), 823 So.2d 938. This crime is identical to molestation of a juvenile, La. R.S. 14:81.2, except that Section 81.2 requires the lewd or lascivious act be committed by the use of force, violence, duress, menace, | ^psychological intimidation, threat of great bodily harm, or by the use of influence by virtue of control or supervision over the juvenile.
 

 For these reasons, we conclude that the evidence was sufficient beyond a reasonable doubt to convict the defendant of aggravated incest.
 

 Excessive sentence
 

 By his second assignment of error, the defendant argues that his sentence is excessive because he has no prior record, other than a DWI, prior to this offense.
 

 The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article.
 
 State v. Smith,
 
 433 So.2d 688 (La.1983);
 
 State v. Lathan,
 
 
 *1088
 
 41,855 (La.App. 2 Cir. 2/28/07), 953 So.2d 890. The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C. Cr. P. art. 894.1.
 
 State v. Lanclos,
 
 419 So.2d 475 (La.1982);
 
 State v. Hampton,
 
 38,017 (La.App. 2 Cir. 1/28/04), 865 So.2d 284,
 
 writs denied,
 
 2004-0834 (La.3/11/05), 896 So.2d 57, and 2004-2380 (La.6/3/05), 903 So.2d 452. The important elements which should be considered are the defendant’s personal history (age, family ties, marital | Mstatus, health, employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation.
 
 State v. Jones,
 
 398 So.2d 1049 (La.1981);
 
 State v. Haley,
 
 38,258 (La.App. 2 Cir. 4/22/04), 873 So.2d 747,
 
 writ denied,
 
 2004-2606 (La.6/24/05), 904 So.2d 728. There is no requirement that specific matters be given any particular weight at sentencing.
 
 State v. Shumaker,
 
 41,547 (La.App. 2 Cir. 12/13/06), 945 So.2d 277,
 
 writ denied,
 
 2007-0144 (La.9/28/07), 964 So.2d 351.
 

 Second, a sentence violates La. Const, art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering.
 
 State v. Smith,
 
 2001-2574 (La.1/14/03), 839 So.2d 1;
 
 State v. Dorthey,
 
 623 So.2d 1276 (La.1993). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice.
 
 State v. Weaver,
 
 2001-0467 (La.1/15/02), 805 So.2d 166;
 
 State v. Robinson,
 
 40,983 (La.App. 2 Cir. 1/24/07), 948 So.2d 379.
 

 The trial court indicated it had read and reviewed a presentence investigation. The court took into account Red-fearn’s social and personal history, noted that he was using prescription drugs (Lor-tab and Xanax) and that he was drinking alcohol on the day of the offenses. The court noted that the defendant believed himself not to be guilty, and the defendant agreed. The court found that there was no strong provocation for the criminal acts and that there was no excuse or justification for the acts. The court noted the lack of any significant criminal history. The court noted that |1fiRedfearn had been viewing pornographic DVDs prior to the crime, which may have led to the commission of the acts for which he was prosecuted.
 

 The trial court found Redfearn’s lack of remorse as an aggravating factor. The trial court found that incarceration would not constitute a hardship on his family, because he was not contributing money to the family, due to his back and neck problems.
 

 The court found that Redfearn’s violation of the trust of his child (the victim) and of the other two children, and his threats to their mother were additional factors in sentencing. The court found as mitigating circumstances his lack of a significant criminal history, his previous steady employment, his back and neck injuries, the loss of his father at age five, and the lack of any other similar crimes against the victim or his other children. The trial court found that Redfearn’s actions in continuing to molest the child after she asked him to quit to be an act of “deliberate cruelty” under the guidelines. The court then sentenced him to 25 years without benefits for the aggravated incest (the mandatory minimum for the offense) and 40 years, including 30 years without benefits, for the sexual battery, imposing the sentences concurrently.
 

 
 *1089
 
 This is a very tragic case in which an entire family has been destroyed. The offenses are so egregious that a severe sentence imposed would not be excessive. The 40-year and 30-year sentences imposed for sexual battery and aggravated incest, respectively, while unquestionably harsh, are less than half the maximum sentences.
 

 |1RWe conclude that the trial court adequately considered and articulated appropriate sentencing factors. Considering the heinous nature of the assault in this case, it does not shock our sense of justice, and is not a purposeless and needless infliction of pain and suffering. Therefore, the sentences are not excessive.
 

 Jury Challenge
 

 By his third assignment, Redfearn requested that the court allow the record to be supplemented and allow a subsequent assignment regarding a jury challenge. After supplementation of the record, defense counsel has now concluded that there is no colorable claim relating to a juror who knew a relatively insignificant witness’s husband, and reported that fact to the trial court. No supplemental brief was filed on that issue, and that claim is deemed abandoned.
 

 Error Patent Review
 

 Our initial review of the record indicated a possible error patent on double jeopardy. As noted, this court directed counsel to file briefs on this issue. The respective parties submitted briefs, and not surprisingly, the state argues that there is no double jeopardy violation, and the defendant argues that there is a double jeopardy violation.
 

 The state’s contention is that the conviction for sexual battery is not the predicate act (“prohibited act”) for the aggravated incest conviction. It contends that the prohibited act for the aggravated incest conviction was either molestation of a juvenile or indecent behavior with a juvenile, both 117crimes having an additional element not required for a conviction for sexual battery and which also requires different evidence to prove.
 

 Conversely, the defendant contends that the evidence for the convictions for sexual battery and aggravated incest was based on the same evidence, which, it contends, violates the double jeopardy prohibition against multiple punishments for the same offense.
 

 In the instant case, the defendant was charged with two crimes: aggravated rape and aggravated incest. The jury returned a verdict of guilty of sexual battery as responsive to the aggravated rape charge and guilty as charged for aggravated incest. As stated above, aggravated incest requires proof that the defendant engaged in one of numerous listed “prohibited acts,” most of which are in themselves separate crimes.
 
 [1]
 
 As previously noted, the indictment for aggravated incest did not include as a prohibited act the charge of “sexual intercourse” with the child, ostensibly to avoid a double jeopardy challenge for a conviction arising out of the same act for which it sought a conviction for aggravated rape. When the matter was submitted to the jury, the court gave jury instructions only for the prohibited acts of sexual battery, molestation of a juvenile, and indecent behavior with juveniles.
 

 An accused who commits separate and distinct offenses during the same criminal episode or transaction may be prosecuted and convicted for each offense
 
 *1090
 
 without violating the prohibition against double jeopardy.
 
 State v. Nichols,
 
 337 So.2d 1074 (La.1976);
 
 State v. Sims,
 
 44,123 (La.App. 2 Cir. 4/15/09), 7 So.3d 1288;
 
 State v. Smith,
 
 44,011 (La.App. 2 Cir. 4/8/09), 7 So.3d 855. The evidence was sufficient to convict the defendant for aggravated incest where the prohibited act was molestation of a juvenile or indecent behavior with juveniles. Accordingly, we must now determine if this constitutes double jeopardy.
 

 The Fifth Amendment to the United States Constitution provides that no person shall be “subject for the same offenses to be twice put into jeopardy of life or limb.”
 
 State v. Brown,
 
 42,188 (La.App. 2 Cir. 9/26/07), 966 So.2d 727,
 
 writ denied,
 
 2007-2199 (La.4/18/08), 978 So.2d 347;
 
 State v. Price,
 
 39,582 (La.App. 2 Cir. 3/23/05), 899 So.2d 633;
 
 State v. Jacobs,
 
 493 So.2d 766 (La.App. 2 Cir.1986). The double jeopardy clause was made applicable to the states through the Fourteenth Amendment, and Article 1, § 15, of the Louisiana Constitution contains a similar guarantee.
 
 Id.
 
 The guarantee against double jeopardy provides three central constitutional protections: (1) protection against a second prosecution for the same offense after acquittal; (2) protection against a second prosecution for the same offense after conviction; and, (3) protection against multiple punishments for the same offense.
 
 State v. Crandell,
 
 2005-1060 (La.3/10/06), 924 So.2d 122;
 
 State v. Knowles,
 
 392 So.2d 651 (La.1980);
 
 State v. Jefferson,
 
 40,439 (La.App. 2 Cir. 1/27/06), 920 So.2d 984;
 
 State v. Blackson,
 
 38,044 (La.App. 2 Cir. 1/28/04), 865 So.2d 272.
 

 The two tests used by Louisiana courts when examining double jeopardy violations are the “distinct fact” or the
 
 Blockburger
 

 [2]
 

 test and the |19“same evidence test.”
 
 [3]
 
 The
 
 Blockburger
 
 test determines whether each crime requires proof of an additional fact which the other does not.
 
 State v. Blackson, supra.
 
 If multiple charges are double jeopardy under
 
 Block-burger,
 
 then the inquiry need go no further, since the constitutional prohibition against double jeopardy will have been abridged.
 

 Even if there is not a finding of double jeopardy under the
 
 Blockburger
 
 test, we must look to Louisiana’s “same evidence” test to see if the state’s greater protection is implicated. The Louisiana definition of double jeopardy test is contained in La. C. Cr. P. art. 596, which states:
 

 Double jeopardy exists in a second trial only when the charge in that trial is:
 

 (1) Identical with or a different grade of the same offense for which the defendant was in jeopardy in the first trial, whether or not a responsive verdict could have been rendered in the first trial as to the charge in the second trial; or
 

 (2) Based on a part of a continuous offense for which offense the defendant was in jeopardy in the first trial.
 

 The “same evidence” test is articulated as this query: “If all the evidence
 
 required
 
 to support a finding of guilt of one crime would also have supported conviction of the other, the two are the same offense under a plea of double jeopardy, and a defendant can be placed in jeopardy for only one.
 
 The test depends on the evidence necessary for conviction, not all the evidence introduced at trial.” State v. Steele, supra
 
 (emphasis supplied). The “same evidence” test is broader in concept
 
 *1091
 
 than
 
 Blockburger,
 
 the [2ocentral idea being that one should not be punished (or put in jeopardy) twice for the same course of conduct.
 
 State v. Steele, supra.
 

 As noted by the Louisiana Supreme Court, “the Double Jeopardy Clause, under both the
 
 [Blockburger
 
 test] and the ‘same evidence’ test, prevents an offender from being convicted of both a felony murder and the underlying felony.”
 
 State v. Sandifer,
 
 1995-2226 (La.9/05/96), 679 So.2d 1324, 1329. We believe that the rationale for this rule could prevent the defendant in this instance from being convicted of both sexual battery and aggravated incest where the underlying “prohibited act” was the same sexual battery.
 
 Cf. State v. Sims, supra; State v. Sandifer, supra.
 

 Applying the
 
 Blockburger
 
 test in the instant case, we determine that a conviction for sexual battery requires proof of an additional fact that aggravated incest/molestation of a juvenile does not, and vice versa. Sexual battery requires that the offender touch the victim on the anus or genitals or the victim touch the offender on the anus or genital. This element is not required for aggravated incest/molestation of a juvenile. Conversely, aggravated incest/molestation of a juvenile requires proof that the defendant had specific intent of arousing or gratifying the sexual desires of either person, an element not included in sexual battery. Accordingly, convictions for sexual battery and aggravated incest/molestation of a juvenile do not constitute double jeopardy under
 
 Blockburger.
 

 However, our inquiry does not stop here; we must consider the “same evidence” test. Application of this test is often difficult when the allegedly separate offenses arise out of one event.
 

 12i In
 
 State v. Bonfanti,
 
 262 La. 153, 262 So.2d 504 (1972), the court sustained the defendant’s claim of double jeopardy regarding a subsequent charge of indecent behavior with juveniles stemming from the same conduct for which he had been convicted of simple battery on the same juvenile. In
 
 Bonfanti,
 
 the court noted that the two charges arose from one occurrence. The evidence used to support the defendant’s previous conviction of simple battery was his use of intentional force on the juvenile by putting his hands up her dress. There was no additional evidence to support the subsequent charge for indecent behavior; thus each offense required the same evidence and subsequent prosecution of the second charge was barred as double jeopardy.
 

 In
 
 State v. Steele, supra,
 
 the defendant was originally charged with three offenses, including reckless driving, DWI, and negligent injuring. He pled guilty to DWI and the charge of reckless driving was dismissed. The state then proceeded to prosecute Steele for negligent injuring. When applying the “same evidence” test to the crimes of DWI and negligent injuring, the Supreme Court
 
 looked at the definitions of the two crimes,
 
 determined that the same evidence would not be required to convict Steele on both charges, and concluded that there was no double jeopardy as to these two charges. However, when the
 
 Steele
 
 court applied the “same evidence” test to the charges of reckless driving and negligent injuring, it concluded that the evidence to prove the second charge (i.e., negligent injuring) would have been sufficient to convict on the first charge (i.e., reckless driving).
 
 Id.,
 
 at 1178. Thus, under the “same evidence” test a ¿¡¿prosecution of the negligent injuring charge would be a violation against double jeopardy.
 

 In
 
 State v. Sandifer, supra,
 
 the defendant was charged with possession of marijuana and cocaine and possession of a
 
 *1092
 
 weapon while in possession of a controlled dangerous substance. The defendant pled guilty to possession of marijuana, and subsequently filed a motion to quash the weapon charge. The Louisiana Supreme Court determined that the evidence of the defendant’s alleged possession of cocaine, for which he had not been convicted, provided a proper basis to support his prosecution under the weapon charge.
 
 Id.,
 
 at 1330. The evidence of the defendant’s possession of marijuana was not required in order to convict him of the weapon offense, because other evidence existed sufficient to support the charge.
 

 The circumstances in this case are analogous to those in
 
 State v. Steele, supra,
 
 and
 
 State v. Sandifer, supra.
 
 The evidence required for the conviction for aggravated incest/molestation of a juvenile is not the same evidence required for sexual battery. In this instance, we have already concluded above that the evidence was sufficient to show that Redfearn engaged in a lewd and lascivious act by fondling himself in the presence of his daughter with the specific intent of gratifying himself. Indeed, the evidence required and proven for this particular conduct is distinct from the evidence of the conduct constituting sexual battery, that is, the defendant’s rubbing of his penis on the victim’s vagina. Additionally, aggravated incest required evidence of the child’s relationship to the father by blood, marriage or adoption which was not required for the sexual battery conviction.
 

 lasWe therefore conclude that the defendant has not been subjected to double jeopardy in this case.
 

 Conclusion
 

 For the reasons stated, we conclude that the evidence was sufficient to support the convictions of sexual battery and aggravated incest. We further conclude that the sentences imposed were not excessive.
 

 Accordingly, the convictions and sentences are affirmed.
 

 CONVICTIONS AND SENTENCES AFFIRMED.
 

 [1]
 

 . The statute lists “sexual intercourse,” which, standing alone, is not a crime in itself, as a prohibited act under the statute.
 

 [2]
 

 .
 
 Blockburger v. United States,
 
 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).
 

 [3]
 

 .
 
 State v. Steele,
 
 387 So.2d 1175 (La.1980).