DREW, J.
L Christopher Michael Johnson was charged by bill of information with attempted first degree murder, a violation of La. R.S. 14:27 and 14:30. He was also indicted for aggravated kidnapping, a violation of La. R.S. 14:44. Following a jury trial, he was found guilty:
• as charged of attempted first degree murder; and
• of the responsive verdict of second degree kidnapping, La. R.S. 14:44.1.
After adjudication as a third-felony offender, he received a life sentence, without benefits, stemming from the attempted murder conviction, to be served consecutively with a 35-year hard labor sentence for second degree kidnapping.
*1142 After our court sent the sentencing issue back to the, trigl court, the two, sentences were ordered served, concurrently. • He now appeals, claiming double jeopardy and excessiveness. We affirm in all respects.
FACTS
At the ifiitial trial, during opening statement, the prosecutor argued:
“It’s very simple. -The defendant burst into the house, where Shawanda McClin-ton was, with the specific intent to kill her.., And while we may never know what he’s thinking unless he tells us, we can — infer some of his intent based upon there — ”
Defendant’s motion for mistrial was granted, over the objection of the state. The trial court stated, “I really see no difference between the words ‘unless he tells us’ from the words ‘unless he testifies’ so the motion for mistrial is granted.”
Following the mistrial, the defense filed a motion to quash, averring that La. C. Or. P. art. 591 prohibits trying a person twice for the same Loffense, with.some exceptions. The defense argued that in this case the district attorney challenged the defendant to take the stand, making his remark egregious and prejudicial, warranting a mistrial. The state argued that he misspoke in his previous statement and intended to say “they” instead of “he” and thus the statement was a difference between pronouns. Defendant’s motion to quash was denied.
Evidence from the second trial revealed that the defendant was romantically involved with Shawanda McClinton for about four years. At some point, she no longer wanted to- be involved with him. In an effort to get away from him, she moved into the home of her cousin, April Henderson.[1]
On August 12, 2009, while unloading a truck with her manager, and another individual at the Family Dollar , in Bossier City, McClinton was approached by the defendant, who was wearing a hood and had his hand in his pocket. The defendant demanded that McClinton leave with him. The manager became uneasy and attempted to call the police, at which point the defendant informed her that if she called the police, he was going to “do it right here.”
The defendant then took McClinton to his .apartment, which he shared with his wife and children. While at the apartment, the defendant told McClinton that he, his wife and children would watch her die. The police, having been alerted by the manager, called McClinton’s phone to check on her safety.
[¡¡The defendant’s wife answered the phone and. pretended to be McClinton. The police requested that McClinton come to the police station; the defendant allowed her to do so. McClinton told the police all of the above events. The police then told the defendant to come to the police station. He sent his wife to the police station instead and she was jailed on kidnapping charges.
Three weeks later, a female looking for McClinton knocked at the Henderson door. Antonio Henderson falsely told the female that McClinton was not home. The female left.- Suddenly, the defendant, armed with a gun, demanded that Henderson come with him. Simultaneously, McClinton ran out of the house to a neighbor’s house to call the police. Henderson left his house with the defendant and with the female who had earlier knocked on the door.
Initially, the three of them drove around Shreveport. The defendant instructed *1143 Henderson to call bis wife, to explain to. her that if the defendant did not speak, with McClinton, Henderson was “as good as dead.”[2] -
The three of them went to a motel in Marshall, Texas; The defendant made several calls from Henderson’s phone to McClinton’s phone.[3] The police told the defendant that they could do.nothing for him until they knew Henderson was safe.
I/The defendant released Henderson, threatening to kill him and- his family unless he requested that- no - charges be brought. Henderson did as he was told.
The. next morning, September 1,.2009, Henderson was in his room playing .video games while McClinton was napping. .He. heard his door being kicked in, then saw the defendant run to Henderson’s room. McClinton curled into the fetal position. The defendant shot her seven times. Amazingly, McClinton survived injuries to her stomach, legs, and back.
After the jury returned its verdicts, motions for post verdict judgment of acquittal and for new trial were denied. A multiple offender hearing was held.
Owen McDonnell of-the Caddo Parish Sheriffs Office testified to the defendant’s commission of two prior felonies: -
• possession with intent to distribute a Schedule II drug in April 2003; and
• attempted armed robbery ■ ■ in June 2000.
The trial court adjudicated the defendant a third-felony habitual offender as to the charge of attempted first degree murder.
Before sentencing, the trial court noted that: ,
• it had reviewed -the sentencing guidelines of La. C. Cr.- P. art. 894.1;
• the ¡defendant needed correctional treatment.in a custodial environment;
• the .defendant’s criminal history involved violent felonies; and
• it had reviewed a presentence investigation report.
.[^Pursuant. to La. R.S. 15:529.1, the defendant was sentenced for the attempted first degree murder to life imprisonment at hard labor without benefit of parole, probation or suspension of sentence. . For second degree kidnapping, the defendant was initially sentenced to a consecutive 35-year hard labor sentence. An oral motion for reconsideration of sentence was denied.
The defendant sought - writs with this court asking that we order the trial court to consider his motion to reconsider the sentence. This we did, in light of La. C. Cr. P. arts. 916(3) and 881.1(C).
Upon reconsideration, the trial court ordered concurrent sentences.
DISCUSSION

Assignment of Error No. 1: Double Jeopardy

The appellant contends that the prosecutor’s opening statements in the first trial goaded the defendant into requesting a mistrial. He thus argues that double jeopardy barred the retrial.
The state responds that double jeopardy is inapplicable under these facts.
Typically, appellate review of a district court’s.ruling on,a motion to qqash is accomplished under an abuse of discretion *1144 standard; see, e.g., State v. Batiste, 2005-1571 (La.10/17/06), 939 So.2d 1245.
The Fifth' Amendment to the United States Constitution provides that no person shall be “subject for’ the same offenses to be twice put into jeopardy of life or limb.” State v. Redfearn, 44,709 (La.App.2d Cir.9/23/09), 22 So.3d 1078, writ denied, 2009-2206 (La.4/9/10), 31 So.3d 6381; State v. Brown, 42,188 (La.App.2d Cir. 9/26/07), 966 So.2d 727, writ denied, 2007-2199 (La.4/18/08), 978 So.2d 347. The double jeopardy clause was made applicable to the states through the 14th Amendment, and Article I, § 15, of the Louisiana Constitution contains a similar guarantee. Id. The guarantee against double jeopardy provides three central constitutional protections: (1) protection against a second prosecution for .the same offense- after acquittal; (2) protection against a second prosecution for the same offense after conviction; and,- (3) protection against multiple punishments for the same offense. State v. Crandell, 2005-1060 (La.3/10/06), 924 So.2d 122; State v. Knowles, 392 So.2d 651 (La.1980); State v. Redfearn, supra. Additionally, La. C. Cr. P. art. 591 provides:
No person shall be twice put in jeopardy of life or liberty for the same offense, except, when on his own motion, a new trial has been granted or judgment has been arrested, or where there has been a mistrial legally ordered under the provisions of Article 775 or ordered with . the express consent of the defendant.
The United States Supreme Court, in a series of decisions, has provided an exception to this general rule if a defendant is required to move for a mistrial due to ah intentional provocation by the prosecution.
In U.S. v. Jorn, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971), the defendant’s first trial for tax evasion was declared a mistrial, without consent of the defendant, after it became clear that several prosecution witnesses were also implicated in the crime and needed to consult with counsel. The Jom court noted that usually when a defendant requests a mistrial, double jeopardy will not bar re-prosecution, in the absence of prosecutorial impropriety designed to avoid.an acquittal..
7In U.S. v. Dinitz, 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976), the court addressed a situation where a defendant requested a mistrial after the trial judge prevented one of the defense lawyers from entering the courtroom.
In denying defendant’s motion to quash, the Dinitz court again noted the general rule that re-prosecution is not barred when a defendant seeks a mistrial, unless the governmental actions were designed to provoke a mistrial request. The trial judge was not found to be in bad faith, nor was the action undertaken to harass or prejudice the defendant. The re-prosecution was allowed.
The rule announced in Jorn and Dinitz was clarified in Oregon v. Kennedy, 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982), a case in which the defendant was on trial for theft. The prosecutor asked a witness if he 'did business with the defendant. When the witness said no, the prosecutor asked if the two did not do business because the defendant was a crook. The court then granted defendant’s motion for mistrial. When the government sought, to retry the defendant, he moved to dismiss, claiming that a retrial was barred by double jeopardy because the prosecutor’s improper question required him to move for a mistrial in the first instance. The Oregon Court of Appeal, relying' upon Jom and Dinitz, referred to the prosecutor’s colloquy with the witness as “overreaching” and dismissed the prosecution, even though it found no intention *1145 al misbehavior on the part of the prosecutor. The United States Supreme Court reversed, and found that re-prosecution was not barred. The court discussed the rale set forth in Jom |sand Dinitz that re-prosecution is barred where a defendant is required to move for a mistrial due to prosecutorial action intended to provoke a mistrial or actions motivated by bad faith or undertaken to harass or prejudice the defendant. The court' then noted that the language of these decisions seemed to broaden the former rulé that the Double Jeopardy Clause would bar re-prosecution only where defendant’s motion for a mistrial was provoked by intentional governmental actions, to a more generalized standard of “bad faith conduct”' or “harassment” on the part of the judge or prosecutor.
The court recognized a need to clarify the rule as to when the Double Jeopardy Clause bars re-prosecution following a successful defense motion for a mistrial. The court stated:
Prosecutorial conduct that might be viewed as harassment or. overreaching, even if sufficient to justify a mistrial on defendant’s motion, therefore, does not bar retrial absent intent on the part of the prosecutor to subvert the protections afforded by the Double Jeopardy Clause. A defendant’s motion for a mistrial constitutes “a deliberate election on his part to forgo his valued right to have his guilt or innocence determined before the first trier of fact.” United States v. Scott, 437 U.S. 82, 93, 98 S.Ct. 2187, 2195, 57 L.Ed.2d 65 (1978). Where prosecutorial error even of a degree sufficient to warrant a mistrial has occurred, “[t]he important consideration, for purposes of the Double Jeopardy Clause, is that the defendant retain primary control over the course to be followed in the event of such error.” United States v. Dinitz, supra, 424 U.S., at 609, 96 S.Ct., at 1080. Only where the governmental conduct in question is intended to “goad” the defendant into moving for a mistrial may a defendant raise the bar of double, jeopardy to a second trial after having succeeded in aborting the first on his own motion.
The court went on to state:
We do not by this opinion lay down a flat rule that where a defendant in a criminal trial successfully moves for a mistrial, |flhe may not thereafter .invoke the bar of double jeopardy against a second trial. But-we do hold that the circumstances under which such a defendant may invoke the bar of double jeopardy in a second effort to try him are limited to those cases in .which the conduct giving rise to thé successful motion for a mistrial was intended' to provoke the defendant into moving for a mistrial.
Under this rale, to invoke the bar of double jeopardy, the defendant must show, that his motion for mistrial was caused by intentional prosecutorial action aimed at causing a mistrial. See also, State v. Koelemay, 497 So.2d 321 (La.App. 2d Cir.1986), writ denied, 503 So.2d 474 (La.1987).
The prosecutor explained that he misspoke and intended to use the pronoun “they” instead of “he.” He further stated that he was trying to instruct the jury on inferring intent from the defendant’s actions. This. explanation was accepted by the trial court, which denied the motion to quash.
The defendant argues that the prosecutor’s comments were in “bad faith” and overreaching, but there is no showing of intentional conduct. The trial court did not' abuse its discretion in denying defendant’s motion to quash.

*1146
Assignment of Error No. 2: Excessiveness

The appellant acknowledges that he is a third-felony offender and has a criminal history, but contends that the life sentence imposed is excessive.' The defendant argues the goals of punishment and rehabilitation can- best be- accomplished with a less severe sentence than life.
|inThe state responds that the trial court considered the La. C. Cr. P. art. 894.1 factors, there were numerous aggravating factors, and the sentence imposed-does not shock the sense of justice given the facts of this ease.-
La. R.S. 15:529.1(A)(3)(b) provides, in salient part, that if the third felony and the two prior felonies are defined as crimes of violence under R.S. 14:2(B), or as a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for 10 years or more, the person shall be imprisoned for life, without benefits. -
Appellate review of sentences for excessiveness is a two-pronged inquiry.[4]
The trial court clearly complied with La. C. Cr.,P. art. 894.1, as it amply considered the defendant’s criminal history, the number of prior Infelony convictions, the fact that firearms and dangerous weapons were used in these crimes, and the detailed pre-sentence investigation report, which includes both mitigating and aggravating factors. Although the trial court originally imposed consecutive sentences, it later granted defendant’s motion to reconsider sentence to the extent that the sentences were ordered to be served concurrently.
This defendant has a lengthy, violent criminal history. Here, the victim was shot seven times by someone with- whom she had been romantically involved. A bullet is still lodged inside her body. Both *1147 she and her cousin’s husband had- been previously kidnapped at gunpoint and threatened with death. Before he shot the victim, the defendant stated that if he could not have her, then no one else could. The victim still suffers, both physically and emotionally, Any lesser sentence than a life sentence would deprecate the seriousness of this crime. Defendant has in no way shown that he is exceptional and thus deserving of a deviation from the mandatory life sentence. There is no abuse of discretion in these sentences.
DECREE
The defendant’s convictions and sentences are AFFIRMED.

. Antonio Henderson, April's husband, also lived in the home with their children.

. The defendant wanted to tell McClinton to go to an' attorney’s office to fill out an affidavit that his wife, who was still in jail, had nothing to do with the previous incident,

. • MeCllnton’s phone was being monitored by the police. ■

. First, the record must show that the sentencing court complied with La. C, Cr. P. art. 894.1. The court need not 'list every aggravating or mitigating factor so long as the record reflects that it adequately considered the guidelines. State v. Marshall, 94-0461 (La.9/5/95), 660 So.2d 819; State v. Limear, 44,830 (La.App.2d Cir. 12/9/09), 26 So.3d 303. When the record shows an adequate factual basis for the sentence imposed, remand is unnecessary even in the absence of full compliance with the article. State v. Lobato, 603 So.2d 739 (La.1992); State v. Linnear, supra. The important elements which should be considered arc the defendant’s personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense, and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Ates, 43,327 (La.App.2d Cir.8/13/08), 989 So.2d 259, writ denied, 2008-2341 (La.5/15/09), 8 So.3d 581. There is no requirement that specific matters be given any particular weight at sentencing. State v. Taves, 2003-0518 (La.12/3/03), 861 So.2d 144; State v. Caldwell, 46,718 (La.App.2d Cir. 11/2/11), 78 So.3d 799.
Second, a sentence violates La. Const. Art. I § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993). A sentence is grossly disproportionate if, when the crime and punishment aro viewed in light, of the harm to society, it shocks the sense of justice. State v. Weaver, 2001-0467 (La. 1/15/02), 805 So.2d 166.
The trial- court is given wide discretion in the imposition, of sentences within the statutory limits, The sentence imposed will not be set aside as excessive absent a manifest abuse of that discretion. State v. Williams, 2003-3514 (La.12/13/04), 893 So.2d 7; State v. Thompson, 2002-0333 (La.4/9/03), 842 So.2d 330; State v. Diaz, 46,750 (La.App.2d Cir. 12/14/11), 81 So.3d 228. On review, an appellate court does not determine whether another sentence may have been more appropriate, but whether the trial court abused its discretion. State v. Williams, supra; State v. Free, 46,894 (La.App.2d Cir.1/25/12), 86 So.3d 29.