# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 24-177

**STATE OF LOUISIANA**

**VERSUS**

**LARRY J. COOPER, JR.**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
TWELFTH JUDICIAL DISTRICT COURT
PARISH OF AVOYELLES, NO. 233,131-B
HONORABLE WILLIAM BENNETT, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**GARY J. ORTEGO**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Gary J. Ortego, Ledricka J. Thierry, and Wilbur L. Stiles, Judges.

**AFFIRMED AND REMANDED, WITH INSTRUCTIONS.**

**Hon. Charles A. Riddle, III**
**District Attorney**
**12th Judicial District Court**
**Anthony Francis Salario**
**P. O. Box 1200**
**Marksville, LA 71351**
**(318) 253-6587**
**COUNSEL FOR APPELLEE:**
     **State of Louisiana**

**Annette Fuller Roach**
**Louisiana Appellate Project**
**P. O. Box 6547**
**Lake Charles, LA 70606-6547**
**(337) 436-2900**
**COUNSEL FOR DEFENDANT/APPELLANT:**
     **Larry J. Cooper, Jr.**

**ORTEGO, Judge**.

In this criminal matter, on September 22, 2022, an Avoyelles Parish grand jury indicted Defendant, Larry J. Cooper, Jr., with two counts of molestation of a juvenile, in violation of La.R.S. 14:81.2.

On September 11, 2023, the defense filed a motion to waive jury trial, and the trial court granted Defendant's motion on the same date.

On September 12, 2023, Defendant appeared for a bench trial. At the conclusion of the trial, the trial court found Defendant guilty as charged on both counts. Thereafter, on October 24, 2023, the trial court sentenced Defendant to serve two twenty-five-year hard labor sentences; directed the penalties to be served without benefit of probation, parole, or suspension of sentence; credited Defendant for time served; and ordered the penalties to run consecutively to each other. The Defendant did not file a motion to reconsider sentence with the trial court. Defendant now appeals both his convictions and his sentences. For the reasons herein, we affirm the convictions and sentences.

<u>**ERRORS PATENT**</u>

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find one possible errors patent and one which mandates a correction needed as to the Uniform Commitment Order.

After imposing the sentences, the trial court stated the following: "This court informs Larry J. Cooper, Jr. that the crime for which he has found to be guilty of is a sex offense and his sentence is not subject to diminution for good behavior." Additionally, the minutes of sentencing state the following:

> AS REQUIRED BY ARTICLE 890.1 OF CODE OF CRIMINAL PROCEDURE AND ARTICLE 894.1D OF THE CODE OF CRIMINAL PROCEDURE, THE COURT DESIGNATED THAT THE

CRIMES INVOLVED WERE SEX CRIMES AND INFORMED THE DEFENDANT WHETHER, PURSUANT TO THE PROVISIONS OF R.S. 15:571.3, THE DEFENDANT'S SENTENCE WAS NOT SUBJECT TO DIMINUTION FOR GOOD BEHAVIOR, AND WHETHER THE SENTENCE IMPOSED WAS ENHANCED PURSUANT TO R.S. 15:529.1 ET SEQ, ARTICLE 893.3[.]

This court has stated the following regarding the trial court's authority to deny diminution of sentence:

> We first address whether the trial court "denied" diminution of sentence. Such a denial by the trial court would constitute error as the supreme court has held that the provisions of La.R.S. 15:537(A), which prohibits diminution of sentence for certain sex offenders, and the provisions of La.R.S. 15:571.3, which sets forth the guidelines for diminution of sentence for all prisoners, do not form part of the sentence. *State v. Prejean*, 08-1192 (La. 2/6/09), 999 So.2d 1135 (per curiam). The guidelines are instead directives to the Department of Corrections in computing an inmate's sentence. *Id. See also State v. Fallon*, 15-1116, p. 4 (La.App. 3 Cir. 4/6/16), 189 So.3d 605. Both the supreme court and this court have repeatedly stated that trial judges lack authority to deny diminution of sentence. *See State v. Narcisse*, 97-3161 (La. 6/26/98), 714 So.2d 698; *Fallon*, 189 So.3d 605. In cases in which the trial court has been found to deny diminution sentence [sic], this court has corrected the sentencing error. *See, e.g., State v. Davis*, 19-562 (La.App. 3 Cir 2/5/20), 291 So.3d 246, *writ granted on other grounds*, 20-392 (La. 6/3/20), 296 So.3d 1041; *Fallon*, 189 So.3d 605.

*State v. Monceaux*, 22-28, pp. 4-5 (La.App. 3 Cir. 6/1/22), 340 So.3d 201, 206.

In *Monceaux*, this court found the trial court's statement regarding good time was merely an advisement that did not need correction. The trial court in *Monceaux* stated the following at sentencing:

> Under 15:571.3, is the defendant subject to diminution for good behavior[?]
>
> It's the Court's position he is not.

*Id.*

In *State v. Broussard*, 22-507 (La.App. 3 Cir. 11/30/22), 354 So.3d 167, this court distinguished *Monceaux* and found Broussard's sentence needed correction. In *Broussard*, the trial court stated the following at sentencing:

2

> Your sentence is not entitled to diminution for good behavior, under the provisions of 15:537, because you stand convicted of a violation of Subpart A(1) of Part 5 of Title 1 of - - I'm sorry - - of Chapter 1 of Title 14 - - namely, molestation of a juvenile.

*Broussard*, 354 So.3d at 168.

In *Broussard*, 354 So.3d at 169, this court discussed cases wherein this court found the trial courts' statements regarding diminution of sentence were merely advisements and cases where this court found the trial court's statements were improper denials of diminution of sentence:

> As recently explained in *State v. Monceaux*, 22-28, p. 6 (La.App. 3 Cir. 6/1/22), 340 So.3d 201, 206, this court is often called upon to determine whether a trial court's statement constituted an actual denial of diminution of sentence or whether it was merely an advisement:
>
> . . . .
>
> Finding the statement was merely an advisement, this court in *Monceaux* stated:
>
>> We conclude the trial court's reference to diminution of sentence in the present matter was likewise merely an advisement and, therefore, not an error requiring correction. Namely, the trial court's passing reference, including its offering of its "position," differentiates this matter from one in which a trial court's reference to diminution of sentence was found to be a denial of that benefit. *See, e.g.,* [*State v.*] *Davis*, [19-562 (La.App. 3 Cir. 2/5/20),] 291 So.3d [246] at 251[, *writ granted on other grounds*, 20-392 (La. 6/3/20), 296 So.3d 1041,] (wherein the trial court definitively stated: "You are not entitled to diminution for good behavior."). Moreover, in *Davis*, the minutes of sentencing indicated that Defendant was not entitled to diminution for good behavior. *Id*. In contrast, the minutes of the sentencing in the present case are silent as to diminution.

*Id*. at 207.

In *State v. Samuel*, 19-408, p. 9 (La.App. 3 Cir. 2/5/20), 291 So.3d 256, 262-63, *writ denied*, 20-398 (La. 7/24/20), 299 So.3d 77, this court also found the trial court's statement was merely an advisement:

At sentencing, the trial court stated the following regarding diminution of sentence:

> [T]he law tells me I have to sentence you under [La.R.S.] 14:42[(B) 2] and through C(b) (sic) to life imprisonment at hard labor without benefit of parole, probation or suspension of sentence; this is a crime of violence and a sex offense and is not subject to diminution for good behavior; it is not an enhanced sentence[.]
> . . . .

> We interpret the trial court's statement simply as an advisement that Defendant's sentence was not subject to diminution and not as a denial by the trial court of diminution of sentence. We further note that the trial court is no longer required to "advise" a defendant as to whether his sentence is subject to diminution. La.Code Crim.P. art. 894.1(D).

*See also State v. Watson*, 21-725, p. 7 (La.App. 3 Cir. 4/27/22), 338 So.3d 95, 100, where this court found the trial court's statement "[t]hese sentences are crimes of violence and are not subject to diminution for good behavior" was merely advisory.

After reviewing the record, and considering the above cases, we find the trial court's statement in the present case was merely an advisement by the trial court, and not an actual denial of diminution of sentence, thus, not an error patent in this case.

Next, we do find an error patent and that the Uniform Commitment Order is in need of correction. The transcript of sentencing states the trial court ordered both counts to be served at hard labor without benefit of probation, parole, or suspension of sentence, but the Uniform Commitment Order does not so indicate. In the event of a conflict, the sentencing transcript prevails. *State v. Williams*, 15-498, (La.App. 3 Cir. 12/9/15), 181 So.3d 857, *writ denied*, 16-26 (La. 1/13/17), 215 So.3d 242.

Accordingly, we instruct the trial court to correct the Uniform Commitment Order to correctly reflect the trial court's order that both sentences were imposed at hard labor, without benefit of probation, parole, to suspension of sentence.

4

## FACTUAL BACKGROUND

The facts of this case will be more fully discussed in Defendant's first assignments of error, which involve the sufficiency of the evidence. However, a brief overview of the evidence offered at trial is as follows: Kristina Michot Guillot, the mother of the victims, P.G. and S.G., alleged that someone inappropriately touched her two daughters. The complaint was called in by Anne Hilton, Mrs. Guillot's aunt, who is "maw-maw" to the two children. Specifically, it was alleged that the person who inappropriately touched her children was Defendant, who was babysitting the children on Christmas Eve while the children's parents were at work. He was accompanied by his girlfriend, Mary Beth Sigmund. Mrs. Guillot's daughter, P.G., was four years old, and her other daughter, S.G., was five years old at the time. After the incident was reported to the police, the two girls were interviewed by Kelly Cleveland of the Children's Advocacy Network. In their interviews, the girls explained that on the night of the incident, Defendant wanted to play "tickle games" or pick them up, and that he had touched their vaginal area underneath their clothes during these times. The girls reported the touching to their mother, Mrs. Guillot, and their aunt, Mrs. Hilton. After the touching and this incident, the children began demonstrating changes in behavior that were consistent with trauma responses. Mrs. Guillot's brother, Adin Michot, who had been present at the date and time of the offenses, also offered certain observations to police. Specifically, he testified at the trial that he observed Defendant under a blanket next to one of the girls and thought the situation was "weird."

## ASSIGNMENTS OF ERROR

Defendant assigns five errors, as follows:

1. When viewed under the *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) standard, the evidence was insufficient to

prove beyond a reasonable doubt that Larry Cooper committed the offense of molestation of a juvenile upon P.G.

2. When viewed under the *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) standard, the evidence was insufficient to prove beyond a reasonable doubt that Larry Cooper committed the offense of molestation of a juvenile upon S.G.

3. The trial court improperly considered as sentencing aggravating factors unsubstantiated and unadjudicated other instances of alleged criminal conduct.

4. Consecutive sentences of twenty-five years on each count to be served at hard labor and without benefit of probation, parole, or suspension of sentence, violate the Eighth Amendment of the Constitution of the United States and La. Const. Art. I, § 20, as they are nothing more than cruel and unusual punishment and, thus, excessive. Larry Cooper's history and the facts of the case do not support the imposition of consecutive sentences.

5. Trial counsel's representation fell below that guaranteed by the Sixth Amendment to the Constitution of the United States. Counsel failed to object to the "first report of sexual assault" testimony admitted through the testimony of C.M. and A.H. as the testimony concerning P.G. was inadmissible hearsay because the State failed to establish that P.G. was "unavailable" and the testimony was not corroborated by other evidence admitted at trial. Counsel further erred in failing to object to the court's failure to conduct the balancing test mandated by La. Evid. Code art. [4]03 before permitting the "first report" evidence to be admitted. As the "first report" testimony was the sole evidence admitted against Larry Cooper on the charge concerning P.G., these errors were not harmless.

## ASSIGNMENTS OF ERROR ONE AND TWO

In these combined assignments of error, Defendant raises several challenges to the sufficiency of the evidence presented by the State.

*Defendant's argument:*

In its first assignment of error, the defense argues there was insufficient evidence to convict Defendant of molesting P.G.: "When viewed under the *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) standard, the evidence was insufficient to prove beyond a reasonable doubt that Larry Cooper committed the offense of molestation of a juvenile upon P.G."

In its second assignment of error, the defense also asserts there was insufficient evidence to convict Defendant of molesting S.G.: "When viewed under the *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) standard, the evidence was insufficient to prove beyond a reasonable doubt that Larry Cooper committed the offense of molestation of a juvenile upon S.G."

The defense urges the State failed to prove beyond a reasonable doubt that Defendant committed a lewd or lascivious act upon the person or in the presence of a child under the age of seventeen, that Defendant touched the children with the intention of arousing or gratifying the sexual desires of either himself or the children, and that that the accused committed the lewd or lascivious act by use of influence by virtue of a position of control or supervision over the juvenile.

In reference to P.G., defense counsel points out P.G.'s failure to disclose at the advocacy center, failure to testify at trial, and the record's absence of an indication that P.G. was unavailable to testify at trial. The defense advances the testimonies of Mrs. Guillot and Ms. Hilton as the only support presented at trial. Defendant points to the claim raised in "Assignment of Error No. 5" and protests trial counsel failed to object to the admissibility of Mrs. Guillot's and Ms. Hilton's testimonies based on inadmissible hearsay.

Alternatively, defense counsel maintains that, even considering Mrs. Guillot's and Ms. Hilton's testimonies, the State failed to prove Defendant's touching P.G. was lewd or lascivious and done with the intent of arousing or gratifying sexual desires of either Defendant or P.G. instead of innocent touching while tickling.

In reference to S.G., the defense points to S.G.'s initial denial at the advocacy center that anyone had ever touched her "private areas." Defense counsel further notes that, when S.G. later said Defendant had touched her under her pajamas, S.G. also stated she did not know what his hand was doing. Defendant additionally

7

remarks S.G. said Defendant had touched her whole body when he grabbed her and cradled her like a baby. The defense then emphasizes that, though S.G. saw Defendant hold P.G. in the same manner, S.G. did not see Defendant touch P.G. inappropriately.

Defense counsel alleges S.G.'s statements were vague and provided insufficient information concerning the touching. Defendant urges S.G.'s statements failed to establish intentional touching as opposed to accidental touching, failed to establish touching of a private area, and failed to establish touching with the intent of arousing or gratifying the sexual desires of either person. The defense argues that, based on Defendant's testimony, the girls were wearing t-shirts and panties, so "S.G.'s panties could have easily slid enough that his hand brushed her genital areas as he was helping her get off the top bunk or when he cradled her like a baby." Defendant contends S.G.'s inability to describe what Defendant's hand was doing supports the theory that the touching was accidental. Defense counsel advances the lack of additional activity, such as kissing, also supports the accidental nature of any touching. The defense posits the girls' Uncle Adin's testimony that Defendant gave him a "weird" look provided no support since Adin did not actually see any inappropriate touching.

Based upon these arguments, defense counsel argues the State failed to prove either allegation of molestation beyond a reasonable doubt and maintains, therefore, this court should reverse Defendant's convictions and sentences and enter an order of acquittal.

*State's position:*

The State responds that Defendant is arguing credibility of the witnesses, which goes to weight of the evidence rather than sufficiency. The State asserts that physical evidence is not required to prove molestation; instead, testimony alone can

be sufficient to establish proof of the offense. The prosecution additionally urges it is not unusual to have no physical evidence for the type of inappropriate touching reported in the instant case.

The State notes the defense asserted S.G.'s testimony was inconsistent, vague, and contradictory, but it does not address those assertions. The prosecutor later claims S.G.'s statements at trial and at the advocacy center were consistent with the account relayed to Mrs. Guillot and Ms. Hilton. The prosecution urges the evidence presented through the five State's witnesses at trial was sufficient to support Defendant's conviction for molestation of S.G.

In response to Defendant's arguments about P.G.'s failure to disclose at the advocacy center, the prosecutor points out Detective Cammack testified it was not uncommon for young children to refrain from making such a disclosure at the advocacy center. The State points out that, when P.G. was in the company of people she knew and trusted, P.G. spontaneously disclosed the abuse and demonstrated it on a baby doll. The prosecution contends the clear account P.G. gave to her mother and great aunt as testified to by her mother and great aunt was sufficient to support Defendant's conviction for molestation of P.G.

The State adds that Defendant and his "wife's" testimonies largely corroborated the statements made by the prosecution's witnesses. Further, the prosecutor alleges Defendant's own testimony nearly constituted an admission of his guilt. Finally, the prosecution maintains the State provided sufficient evidence to prove beyond a reasonable doubt that Defendant molested P.G. and S.G.

*Analysis:*

The Louisiana Supreme Court has discussed the standard for reviewing the sufficiency of the evidence in cases involving circumstantial evidence:

Appellate review for minimal constitutional sufficiency of evidence is a limited one restricted by the due process standard of *Jackson v. Virginia. See State v. Rosiere*, 488 So.2d 965, 968 (La. 1986). Under the due process standard of *Jackson v. Virginia*, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any rational* trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). "In reviewing the evidence, the whole record must be considered because a rational trier of fact would consider all of the evidence[.]" *State v. Mussall*, 523 So.2d 1305, 1310 (La. 1988).

*State v. Alexander*, 22-1205, pp. 1–2 (La. 5/5/23), 362 So.3d 356, 357–58. "The trier of fact makes credibility determinations and may, within the bounds of rationality, accept or reject the testimony of any witness." *State v. Brown*, 18-1999, p. 56 (La. 9/30/21), 330 So.3d 199, 246, *cert. denied*, ___ U.S. ___, 142 S.Ct. 1702 (2022).

The *Jackson* standard does not permit a reviewing court to substitute its own appreciation of the facts for that of the factfinder. *See State v. Robertson*, 96-1048, p. 1 (La. 10/4/96), 680 So.2d 1165, 1166. It is not the province of a reviewing court to assess witness credibility or reweigh evidence. *State v. Smith*, 94-3116, p. 2 (La. 10/16/95), 661 So.2d 442, 443. As explained in State v. *Mussall*,

> If *rational* triers of fact could disagree as to the interpretation of the evidence, the *rational* trier's view of all of the evidence most favorable to the prosecution must be adopted. Thus, *irrational* decisions to convict will be overturned, *rational* decisions to convict will be upheld, and the actual fact finder's discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law.

523 So.2d 1305, 1310 (La.1988) (emphasis in original, footnote omitted).

A court charged with reviewing whether the evidence was sufficient to convict under the *Jackson* standard must largely defer to rational conclusions of the factfinder. The *Jackson* standard "leaves juries broad discretion in deciding what inferences to draw from the evidence presented at trial, requiring only that jurors draw reasonable inferences from basic facts to ultimate facts." *Coleman v. Johnson*, 566 U.S. 650, 655, 132 S.Ct. 2060, 2064, 182 L.Ed.2d 978 (2012) (internal citations and quotation marks omitted). "Sufficiency review essentially addresses whether the government's case was so lacking that it should not have even been submitted to the jury." *Musacchio v. United States*, 577 U.S. 237, 243, 136 S. Ct. 709, 715, 193 L.Ed.2d 639 (2016) (internal quotation marks omitted).

*State v. Bourgeois*, 20-883, p. 6 (La. 5/13/21), 320 So.3d 1047, 1051–52.

Molestation of a juvenile, as charged in the instant case, is defined as follows:

> Molestation of a juvenile is the commission by anyone over the age of seventeen of any lewd or lascivious act upon the person . . . of any child under the age of seventeen, where there is an age difference of greater than two years between the two persons, with the intention of arousing or gratifying the sexual desires of either person, by the use of . . . influence by virtue of a position of control or supervision over the juvenile. Lack of knowledge of the juvenile's age shall not be a defense.

La.R.S. 14:81.2(A)(1). Evidence of physical injury or trauma is not an element of the offense of molestation. *State v. Davis*, 47,599, (La.App. 2 Cir. 1/16/13), 108 So.3d 833, *writ denied*, 13-381 (La. 9/20/13), 123 So.3d 163.

### Age of Parties/Victims:

Of importance, and as to proof of the age element of these crimes, we note that the Defendant does not challenge the State's proof of how old the parties were at the time of the offense.

### Lewd or Lascivious Act:

Thus, we will first address Defense counsel's contention that the prosecution failed to prove a lewd or lascivious act performed with an intent to arouse or gratify the sexual desires of either Defendant or the victims.

In *State v. A.B.M.*, 10-648, pp. 3–4 (La.App. 3 Cir. 12/8/10), 52 So.3d 1021, 1024, this court discussed the behaviors constituting lewd or lascivious acts performed with the intent to arouse or gratify the sexual desires of either the offender or the victims:

> As noted in *State v. Rollins*, 581 So.2d 379, 382 (La.App. 4 Cir.1991), "A lewd or lascivious act is one which tends to excite lust and to deprave the morals with respect to sexual relations and which is obscene, indecent, and related to sexual impurity or incontinence carried on in a wanton manner. *State v. Holstead*, 354 So.2d 493 (La.1977); *State v. Prejean*, 216 La. 1072, 45 So.2d 627 (1950)." *See also State v. Cloud*, 06–877 (La.App. 3 Cir. 12/13/06), 946 So.2d 265, *writ denied*, 07–86 (La.9/21/07), 964 So.2d 331. This court in *State v. Shirah*, 97–384 (La.App. 3 Cir. 10/8/97), 702 So.2d 825, found that the acts alleged by the children, the victims therein, including the defendant's touching of their genitals, forcing them to touch his penis, masturbating in front of and attempting vaginal intercourse with one of the children, clearly constituted

lewd or lascivious acts committed with the intention of arousing or gratifying the sexual desires of either person. *See also State v. Hillman*, 613 So.2d 1053 (La.App. 3 Cir.), *writ denied*, 617 So.2d 1181 (La.1993).

"Touching the victim's genitals satisfies the elements of a lewd or lascivious act and the intent to gratify the offender's or the victim's sexual desires." *State v. Robinson*, 49,821, p. 9 (La.App. 2 Cir. 5/20/15), 166 So.3d 395, 400, *writ denied*, 15-1400 (La. 9/16/16), 206 So.3d 201.

In *State v. Robinson*, 51,830, (La.App. 2 Cir. 2/28/18), 246 So.3d 725, *writ denied*, 18-573 (La. 2/11/19), 263 So.3d 897, the second circuit found kissing the victim and touching her body and genitals outside her clothing was sufficient to prove lewd and lascivious acts.

*Evidence at trial:*

At the trial, the State called five witnesses, including S.G., one of the victims, and the defense called two witnesses, including Defendant in his own defense. We will review the evidence as to the issue of sufficiency of evidence.

The testimony of the victims' mother, Mrs. Guillot, regarding the initial disclosures, revealed that P.G. made the initial disclosure by suggesting she and Mrs. Guillot could play the tickle game like Defendant had played with P.G. Then P.G. demonstrated the tickle game by tickling Mrs. Guillot's belly and attempting to tickle her private area. When asked to demonstrate the tickle game on a baby doll, P.G. tickled the doll's belly for a short time before moving on to tickle the doll's private area. Mrs. Guillot related that S.G. then approached her and said Defendant had also touched her on her "privacy," "tu-tu," or "nun-no square" while gesturing to her front private area. S.G. then explained Defendant had picked her up out of bed. S.G. demonstrated this by picking up the doll, cradling it, and rocking it like a baby. S.G. reported that, while Defendant did this, he tickled her belly and then touched her "nun-no square."

Mrs. Hilton, the girls' maternal aunt, who was also present during the disclosures, confirmed that both girls confirmed to her and their mother, Mrs. Guillot, that Defendant had touched them inappropriately on their private area.

In S.G.'s statement at the Children's Advocacy Network center, she related to Ms. Kelly Cleveland that Defendant picked her up from her bed, held her like a baby, and touched her where she peed under her pajamas and panties, whereas P.G. denied anyone touching her or hurting her. [1]

Additionally, one of the victims, S.G., testified at trial that Defendant had touched her "privacy" under her pajamas when he woke her up and got her out of bed. Although P.G. did not testify at trial, S.G. recalled P.G. telling her at their aunt's house about Defendant touching P.G.

At trial, Defendant testified and although he conceded that he had physical contact and "tickled" the girls, he denied molesting either P.G. or S.G. Defendant also testified the girls were wearing t-shirts and panties, not pajamas, and denied touching them inappropriately.

As to defense counsel's contention that these touches could have been accidental as the evidence at trial showed that Defendant touched S.G.'s genitals while holding her "like a baby" and that Defendant touched P.G.'s genitals during a "tickle game," neither of those criminal acts/activities requires contact with genitals. Thus, we find that the fact that Defendant touched both girls in the same way, while seeming to be engaging in different types of play, makes the inadvertence or accident of the acts to be very unlikely.

---

[1] Detective Michael G. Cammack testified and identified State Exhibits 1 and 2 as the DVDs containing S.G.'s and P.G.'s interviews, which the trial court admitted into evidence and was viewed by the court and parties.

It is the role of the fact finder to weigh the respective credibility of the witnesses and make credibility determinations, and they may accept testimonies in whole or in part. The trial court heard all of the testimony, including some conflicting evidence in this matter. Thus, we find there is sufficient evidence in the record to support the trial court's conclusion and findings.

Therefore, when the evidence is viewed in the light most favorable to the prosecution, we find that the State satisfied its burden of proving Defendant committed lewd or lascivious acts with the intent to arouse or gratify the sexual desires of either the offender or the victims.

*Control or Supervision over the Juvenile:*

Next, Defendant, in brief, also contends the State failed to prove the use of influence by virtue of a position of control or supervision over the juvenile.

Our sister court, the second circuit, has explored the meaning of this element of molestation:

> The meaning of the phrase "influence by virtue of a position of control or supervision" in La. R.S. 14:81.2 is not restricted in its application to persons to whom the parent entrusts the child for care, usually for a fee, such as babysitters, childcare workers, or teachers. *Id*. Rather, the statute permits finding evidence of supervision or control by noncustodial parents, relatives, friends, and neighbors of young victims. *Id*. Living in the home with the victim, acting as a father figure to the victim, and exercising emotional control over the victim have been found to be sufficient to support a finding of supervision or control. *Id*. Louisiana courts consider the following factors when determining whether a defendant used influence by virtue of his position of supervision or control over the victim: (1) the amount of time the defendant spent alone with the victim; (2) the nature of the relationship between the victim and the defendant; (3) the defendant's age; and (4) the defendant's authority to discipline. *Id*.

*State v. Hernandez*, 55,256, pp. 11–12 (La.App. 2 Cir. 8/9/23), 369 So.3d 962, 969 (footnote omitted) (citing *State v. Redfearn*, 44,709 (La.App. 2 Cir. 9/23/09), 22 So.3d 1078, *writ denied,* 09-2206 (La. 4/9/10), 31 So.3d 381).

14

Additionally, this court has found that when the offender is a babysitter, such satisfied the element of the offense of molestation requiring use of influence by virtue of a position of control or supervision over the juvenile. *See State v. Hillman*, 613 So.2d 1053, (La.App. 3 Cir. 1993), *writ denied*, 617 So.2d 1181 (La.1993); *see also State v. Roy*, 15-515, (La.App. 3 Cir. 11/4/15), 177 So.3d 1103, *writ denied*, 20-179 (La. 7/17/20), 298 So.3d 177.

In *State v. Sanderson*, 49,957, (La.App. 2 Cir. 7/22/15), 174 So.3d 149, the second circuit found a babysitter's boyfriend to have used influence by virtue of a position of control or supervision over the juvenile in a case where the victim testified the babysitter left her alone with the defendant at times when there were no other adults present. In making this ruling, the second circuit cited to *State v. Goss*, 46,193, (La.App. 2 Cir. 5/18/11), 70 So.3d 6, wherein, the second circuit earlier held the defendant frequently having charge of his victim without other adults being present meant he was in a position of control or supervision.

Here, the evidence in the instant case shows the Guillots hired Defendant's girlfriend, Ms. Sigmund, to babysit their children. During his police interview, Defendant identified Ms. Sigmund as his wife. During the trial, the Guillots also indicated they thought Defendant was Ms. Sigmund's husband. However, Ms. Sigmund was the only person to clarify at trial that she and Defendant were not married.

Ms. Sigmund testified Defendant accompanied her every day she babysat, stayed with her, drove her to and from the Guillot's home, drove her and the children to and from the Guillot's residence, and played with both S.G. and P.G. Ms. Sigmund further conceded she left S.G. and P.G. alone with Defendant while she was in the restroom or tending to their younger brother.

15

A review of the evidence shows Defendant interacted with the children each day. Specifically, and according to S.G.'s testimony, as well as P.G.'s disclosure, Defendant woke the girls up, got them out of bed, and played with them. Further, Adin Michot's testimony revealed that, during the days at issue, he observed Defendant alone with the girls when Ms. Sigmund was not in the room. Adin also testified he observed Defendant holding P.G. on his lap under some blankets, and "it kind of put up another red light" when he observed Defendant's actions with S.G. and P.G.

According to Detective Michael G. Cammack's testimony regarding Defendant's police interview, Defendant's explained the events of December 26, 2021, as if he were a co-sitter:

> Larry stated they went to [Kristina's] to babysit for a short time. He stated he remembered going to Christina's house early in the morning and feeding the kids . . . . Larry stated Mary Beth changed the children and he feed [sic] them. Stated he did not go and wake any of the children up. . . . Larry stated he only hugged them and put them in their car seats.

Additionally, in his own testimony, Defendant admitted he played with S.G. and P.G. and tickled them. Defendant also mentioned retrieving a blanket for the girls when they were cold. Defendant agreed he also sat with P.G. on his lap and covered them with a blanket.

We find that Defendant participated in taking care of S.G. and P.G.; thus, when the evidence is viewed in the light most favorable to the prosecution, the State satisfied this final element of the offense of molestation.

In summary, and after a thorough review of the record, we find that when the evidence is viewed in the light most favorable to the prosecution, the evidence presented by the State was sufficient to prove all elements of the charges against Defendant beyond a reasonable doubt as to the two counts of molestation of a juvenile, and thus, this assignment of error lacks merit.

16

## ASSIGNMENTS OF ERROR THREE AND FOUR

Next, we will address Defendant's claims and assignments of error as to his sentencing.

In his third assignment of error, Defendant contests the aggravating factors considered by the district court at sentencing: "The trial court improperly considered as sentencing aggravating factors unsubstantiated and unadjudicated other instances of alleged criminal conduct." Defendant points out the sentencing court twice mentioned there had been an unconfirmed report to the probation and parole officer compiling the pre-sentence investigation report that Defendant was suspected of but had not been arrested for performing a similar act on a family member. Defense counsel further protests the district court's unsupported reference to other disclosures the victims had made during therapy. Based upon this assignment of error, Defendant asks this court to set aside Defendant's sentences and remand the case to the district court with instructions to examine the validity of the listed referenced matters, to re-assess the weight of those things as aggravating factors, and to reconsider Defendant's sentences thereafter.

In his fourth assignment of error, Defendant further argues the trial court should not have ordered the penalties to run consecutively:

> Consecutive sentences of twenty-five years on each count to be served at hard labor and without benefit of probation, parole, or suspension of sentence, violate the Eighth Amendment of the Constitution of the United States and La. Const. Art. I, § 20, as they are nothing more than cruel and unusual punishment and, thus, excessive. Larry Cooper's history and the facts of the case do not support the imposition of consecutive sentences.

The defense asserts the district court failed to set forth the factors warranting consecutive sentences as required for offenses arising out of the same act or transaction. Defendant contends the sentences should run concurrently in the instant case because "the two offenses were: 1) part of a common scheme or plan; 2)

17

occurred on the same day, and at the same location; and 3) did not involve repeated acts of sexual abuse over a period of time."

Defense counsel further argues the sentencing court failed to give adequate weight to the mitigating factors in the instant case: Defendant was thirty-eight years old with no prior criminal record, and the two offenses were minimal in comparison to most molestation cases.

The defense maintains concurrent sentences would not lessen the seriousness of the crimes and would sufficiently deter any future criminal conduct. Defendant asks this court to set aside his sentences and remand the matter to the trial court for resentencing with instructions for the district court to impose the two sentences to run concurrently.

In his fifth assignment of error, the defense generally adds, without any application of the ineffective assistance of counsel analysis, that trial counsel denied Defendant effective assistance by failing to object to the sentencing court's consideration of an unadjudicated criminal charge, to object to the sentencing court's consideration of additional disclosures made during therapy, and to file a motion to reconsider sentence challenging the district court designating the penalties to run consecutively:

> Counsel further rendered assistance below that guaranteed by the Sixth Amendment when he failed to seek reconsideration of the imposition of consecutive sentences and when counsel also failed to object to the court's consideration of the unadjudicated allegation of criminal conduct and subsequent unspecified disclosures as aggravating factors in arriving at the sentences imposed in this case.

It is important to note that Defendant does not explain how any such objections or motions would have resulted in a different outcome at sentencing.

As to Defendant's third assignment of error, the State argues the sentencing court did not improperly consider instances of alleged criminal conduct as an

18

aggravating factor in sentencing Defendant. The prosecution maintains the district court followed the appropriate procedure and addresses each of the sentencing guidelines set forth in La.Code Crim.P. art. 894.1. The prosecutor further argues the trial court is allowed to consider other criminal activity that did not result in a conviction in setting a defendant's penalty. The State asserts, even so, the variety of factors listed in the sentencing court's reasons for ruling means that consideration of Defendant's unadjudicated criminal activity was insignificant when one considers the totality of the circumstances.

In response to Defendant's fourth assignment of error, the State denies Defendant's penalties constitute excessive sentences, cruel and unusual punishment, as well as a violation of the Eighth Amendment. The prosecutor also argues Defendant's senseless and heinous crimes will forever affect the victims and their entire family. The State points out Defendant's twenty-five-year sentences are the minimum allowed under La.R.S 14:81.2(D)(1). The prosecution points out there is no requirement that the sentencing court run the penalties concurrently. The prosecuting attorney argues that, considering the multitude of factors listed by the district court, including the massive impact on the victims and their family, the sentencing court did not abuse its broad sentencing discretion in imposing consecutive twenty-five-year sentences in the instant case.

As to Defendant's fifth assignment of error alleging ineffective assistance of counsel for failure to raise objections at sentencing or in a motion to reconsider sentence, the State contends the defense failed to establish its allegations because it only made general and/or conclusory allegations.

*Analysis:*

As noted in the procedural history, the defense did not raise any of these objections during the sentencing hearing and did not file a motion to reconsider sentence with the district court.

Under La.Code Crim.P. art. 881.1(E), the failure to object or file a motion to reconsider sentence bars review of a defendant's sentences on appeal:

> Failure to make or file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider sentence may be based, including a claim of excessiveness, shall preclude the state or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review.

However, this court has previously reviewed sentences for bare excessiveness where no objection has been made or motion to reconsider sentence has been filed. *State v. Wright*, 23-468, (La.App. 3 Cir. 3/27/24), 386 So.3d 1107 (citing *State v. Jackson*, 14-9 (La.App. 3 Cir. 6/18/14), 146 So.3d 631, *writ denied*, 14-1544 (La. 2/27/15), 159 So.3d 1066]; *State v. Soriano*, 15-1006 (La.App. 3 Cir. 6/1/16), 192 So.3d 899, *writ denied*, 16-1523 (La. 6/5/17), 219 So.3d 1111; *State v. Price*, 16-899 (La.App. 3 Cir. 4/5/17), 216 So.3d 304; *State v. Debarge*, 17-670 (La.App. 3 Cir. 2/7/18), 238 So.3d 491).

Defendant argues ineffective assistance of counsel for his trial attorney's failure to file a motion to reconsider sentence challenging the imposition of consecutive penalties in the instant case. In relation to the excessive sentence claims, defense counsel argues imposition of consecutive sentences in the instant case are constitutionally excessive.

In *State v. Prudhomme*, 02-511, p. 16 (La.App. 3 Cir. 10/30/02), 829 So.2d 1166, 1177, *writ denied*, 02-3230 (La.10/10/03), 855 So.2d 324, this court examined the requirements for establishing a claim of ineffective assistance of counsel for failure to file a motion to reconsider sentence:

Failure to file a motion to reconsider the sentence does not necessarily constitute ineffective assistance of counsel. *State v. Texada*, 98–1647 (La.App. 3 Cir. 5/5/99); 734 So.2d 854. Nevertheless, the defendant may have a basis to claim ineffective assistance of counsel when he can show a reasonable probability, but for defense counsel's error, his sentence would have been different. *Id*. Furthermore, in *State v. Francis*, 99–208 (La.App. 3 Cir. 10/6/99); 748 So.2d 484, *writ denied*, 00–0544 (La.11/13/00); 773 So.2d 156, this court stated:

> . . . [W]here the record contains evidence sufficient to decide the issue and the issue is raised by an assignment of error on appeal, it may be considered. *State v. James*, 95–962 (La.App. 3 Cir. 2/14/96); 670 So.2d 461.

*Id*. at p. 10–11; 748 So.2d at 491. Since we find that the record contains sufficient evidence to address this ineffective assistance of counsel issue, we will determine whether there was a reasonable probability that the defendant's sentence would have been reduced had defense counsel made or filed a motion to consider his sentence.

In *State v. Blake*, 03-1465 (La.App. 3 Cir. 5/5/04), 872 So.2d 602, this court held that, in examining a claim of ineffective assistance of counsel for failure to file a motion to reconsider sentence, this court will first determine whether the trial court would have reduced the defendant's sentence had trial counsel filed a "Motion to Reconsider Sentence" and, second, whether the sentences were excessive.

Upon reviewing the trial record, the information adduced at the sentencing hearing, the district court's detailed reasons for sentencing, and considering the fact that Defendant received minimum sentences, we find there was not a reasonable probability that a motion for reconsideration would have resulted in the sentencing court ordering the penalties to run concurrently. Further, as discussed below, we find consecutive sentences in the instant case were not excessive. As such, we find no ineffective assistance of counsel for the trial attorney's decision to refrain from filing a motion to reconsider sentence challenging the consecutiveness of Defendant's penalties.

Additionally, we note Defendant does not contest the individual length of his twenty-five-year sentences, which are the minimum allowed under the relevant

21

sentencing provision. *See* La.R.S. 14:81.2(D)(1). "A mandatory minimum sentence is presumed to be constitutional." *State v. Rogers*, 07-427, p. 4 (La.App. 3 Cir. 10/31/07), 969 So.2d 707, 710 (citing *State v. Johnson*, 97-1906 (La. 3/4/98), 709 So.2d 672).

Therefore, the lengths of Defendant's individual penalties are not constitutionally excessive.

> [A] panel of this court discussed the review of excessive sentence claims, stating:

> La. Const. art. I, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. *State v. Campbell*, 404 So.2d 1205 (La.1981). The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate.

> Further, in reviewing the defendant's sentences, the appellate court should consider the nature of the crime, the nature and background of the offender, and the sentences imposed for similar crimes. . . . [Another] panel of this court observed that:

> While a comparison of sentences imposed for similar crimes may provide some insight, "it is well settled that sentences must be individualized to the particular offender and to the particular offense committed." *State v. Batiste*, 594 So.2d 1 (La.App. 1 Cir.1991). Additionally, it is within the purview of the trial court to particularize the sentence because the trial judge "remains in the best position to assess the aggravating and mitigating circumstances presented by each case." *State v. Cook*, 95-2784 (La. 5/31/96), 674 So.2d 957, 958, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).

*State v. Soileau*, 13-770, pp. 4–5 (La.App. 3 Cir. 2/12/14), 153 So.3d 1002, 1005–06 (second alteration in original) (citations omitted), *writ denied*, 14-452 (La. 9/26/14), 149 So.3d 261.

Thus, the remaining issue is whether the trial court's order directing the penalties to run consecutively is so grossly disproportionate to the severity of the crimes as to shock our sense of justice or makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering.

> If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. Other sentences of imprisonment shall be served consecutively unless the court expressly directs that some or all of them be served concurrently.

La.Code Crim.P. art. 883.

Additionally, this court has held that when sex offenses are committed "against different victims on different dates, . . . they did not constitute the same act or transaction and were not part of a common scheme or plan." *State v. H.B.*, 06-1436, p. 11 (La.App. 3 Cir. 4/4/07), 955 So.2d 255, 262.

Here, in the instant case, there were two different victims, but the record does not show whether the offenses occurred on the same or different dates. This court also stated, "[r]eview of the jurisprudence shows that different victims, places, or dates mean different transactions and different schemes or plans." *Id.* at 260. That statement can be read to mean that molestation committed against different victims on the same date and same place also means different transactions and different schemes or plans. If so, Defendant's consecutive penalties were in compliance with La.Code Crim.P. art. 883.

In *State v. McKee*, 16-300, pp. 11–12 (La.App. 3 Cir. 11/2/16) (unpublished opinion) (2016 WL 6495075), *writ denied*, 16-2125 (La. 9/6/17), 224 So.3d 983, this court held that offenses occurring against the same victim at the same place on two consecutive dates "do not arise out of the same transaction or occurrence or the same

common scheme or plan" even though the defendant was in continuous control of the victim for the entire span of time. However, this court also discussed the factors for determining abuse of discretion for imposition of consecutive sentences for offenses arising out of the same act, transaction, or common scheme or plan.

In *State v. George*, 26,867 (La.App. 2 Cir. 4/5/95), 652 So.2d 1382, *writ denied*, 95-1151 (La. 9/29/95), 660 So.2d 855, the second circuit examined a case involving two victims (Ruth Litton and Leila Williams) wherein the sentencing court imposed the maximum term of imprisonment for two counts of armed robbery, two counts of kidnapping, and one count of aggravated rape all occurring on the same date. The sentencing court grouped the penalties by victim. The district court directed all of the penalties for the offenses against Ruth Litton to run concurrently, designated all of the sentences for the offenses against Leila Williams to run concurrently, but ordered the penalties for the offenses against Ruth Litton to run consecutively to the sentences for the offense against Leila Williams. *Id*. The second circuit affirmed the consecutive sentences, holding, "while all of the offenses occurred on the same date, they involved two different victims and are not considered a single course of conduct." *Id.* at 1392.

Thus, we find the trial court's ordering the penalties to run consecutively did not constitute a manifest abuse of discretion because that order was in compliance with the rule set forth by La.Code Crim.P. art. 883. Therefore, we find the trial court's ruling and the record before this court adequately support imposition of consecutive sentences.

In cases arising out of a single act, single transaction, common scheme, or common plan, "consecutive sentences are not prohibited; rather, the trial court must specifically justify its imposition of consecutive sentences." *State v. Massey*, 08-839, p. 6 (La.App. 3 Cir. 12/10/08), 999 So.2d 343, 348. "The failure of the trial

24

court to articulate the reasoning behind imposing consecutive sentences does not require that the matter be remanded if the record adequately supports consecutive sentences." *State v. McLendon*, 23-298, pp. 22–23 (La.App. 3 Cir. 11/22/23), 374 So.3d 435, 450 (citing *State v. McKeel*, 13-855 (La.App. 3 Cir. 2/12/14), 153 So.3d 1029), *writ denied*, 23-1672 (La. 6/19/24), 386 So.3d 1080.

> Defendant's criminal history, the dangerousness and viciousness of the crimes, the harm to the victims, whether the defendant poses an unusual risk of harm to the public, the defendant's potential for rehabilitation, and whether the defendant benefited from a plea agreement are relevant to whether imposing consecutive sentences is appropriate. *State v. Henson*, 19-881 (La.App. 3 Cir. 6/3/20), 298 So.3d 844, *writ denied*, 20-785 (La. 11/18/20), 304 So.3d 422.

*McLendon*, 374 So.3d at 450.

Here, the trial court presided over the entire trial, and considered the sentencing factors outlined in La.Code Crim.P. art. 894.1. The trial court ultimately decided that probation or any lesser sentence would deprecate the seriousness of Defendant's offenses and made the following express findings pertinent to the factors to be considered in examining the appropriateness of imposing consecutive penalties for offenses arising from the same act, same transaction, common scheme, or common plan: Defendant has no prior criminal history; the offenses resulted in a significant injury to the victims; there is an undue risk that this defendant would commit another crime without proper rehabilitation and/or incarceration; and there are some indications that Defendant may have been involved in a similar offense, which was not considered as part of Defendant's criminal history.

Additionally, information from the record shows that significant financial harm was incurred by the victims' family as a result of the offense. The family had to move because of their residence's proximity to Defendant. The family also paid for therapy for both the victims and the mother of the victims.

25

Moreover, not only did the victims suffer psychological harm from the offenses, but the entire family suffered. The record before this court reveals the instant offenses had a significant emotional and mental impact on both Mrs. Guillot and Ms. Hilton because they had both been subjected to sexual abuse as children. Mrs. Guillot had to undergo counseling and begin taking medication. Ms. Hilton was having trouble sleeping and having nightmares when she was able to sleep. Thus, we find that, even if La.Code Crim.P. art. 883 states a preference for concurrence in the instant case, the trial court's decision to run the penalties consecutively did not constitute a manifest abuse of discretion.

In summary, we find the trial court's ordering the sentences to run consecutively did not constitute a manifest abuse of discretion because that order was in compliance with the rule set forth by La.Code Crim.P. art. 883. Thus, we find the trial court's ruling and the record before this court adequately support imposition of consecutive sentences, as it is not so grossly disproportionate as to the seriousness of these crimes as to shock this court's sense of justice.

Therefore, we find Defendant's consecutive, twenty-five-year hard labor sentences for molestation of a juvenile are not excessive.

Finally, Defendant asserts ineffective assistance of counsel for the trial attorney's failure to object to the district court referencing information not adduced at trial as aggravating factors in deciding Defendant's sentence. This information included an unconfirmed report that Defendant was suspected of doing the same or similar thing to one of his family members and a reference to additional information disclosed during therapy.

As noted in our effective counsel analysis hereinbelow, defense counsel does not explain how any such objection would have altered the outcome of his sentencing hearing in light of Defendant receiving the statutory minimum sentences. Further,

26

Defense counsel does not allege that the information is false or inaccurate or that their removal from consideration as aggravating factors would have resulted in concurrent sentences. Instead, the defense asks this court to vacate the sentences and remand the matter to the trial court for resentencing with instructions for the district court to evaluate the validity of the unconfirmed report and additional disclosure before reassessing their weights as aggravating factors prior to resentencing. Accordingly, Defendant has failed to meet his burden of proof, and thus, these assignments of error are without merit.

**ASSIGNMENT OF ERROR FIVE**

Next, Defendant's assignment of error Number Five are claims of ineffective assistance of counsel.

*Defendant's position:*

The defense contends Defendant was deprived of effective assistance of counsel when his trial attorney failed to make an evidentiary objection:

> Trial counsel's representation fell below that guaranteed by the Sixth Amendment to the Constitution of the United States. Counsel failed to object to the "first report of sexual assault" testimony admitted through the testimony of C.M. and A.H. as the testimony concerning P.G. was inadmissible hearsay because the State failed to establish that P.G. was "unavailable" and the testimony was not corroborated by other evidence admitted at trial. Counsel further erred in failing to object to the court's failure to conduct the balancing test mandated by La. Evid. Code art. [4]03 before permitting the "first report" evidence to be admitted. As the "first report" testimony was the sole evidence admitted against Larry Cooper on the charge concerning P.G., these errors were not harmless.

Defendant asserts trial counsel was ineffective for failing to object to the first report testimonies of Mrs. Guillot and Ms. Hilton in reference to the incident involving P.G. because the State failed to establish P.G. was unavailable or unwilling to testify at trial and because no other evidence at trial corroborated the first report testimonies. Defense counsel argues Defendant was prejudiced by his trial attorney's failure to object because Defendant was convicted based upon those witnesses'

testimonies as there was no other evidence in the record of Defendant molesting P.G. Defendant additionally contends that the admission of the evidence was not harmless because of the lack of other evidence in the record showing Defendant molested P.G.

As included in the assigned error, the defense further claims Defendant's trial counsel was ineffective for failing to require the district court to verbally conduct the La.Code Evid. art. 403 balancing test on the record before permitting Mrs. Guillot and Ms. Hilton to testify about P.G.'s first report. Defense counsel does not elaborate on the analysis of the evidence under La.Code Evid. art. 403 balancing test or argue that such an analysis would result in the exclusion of the evidence.

*State's position:*

The State responds that trial counsel was not ineffective for failing to object to the hearsay evidence presented by Mrs. Guillot and Ms. Hilton regarding P.G.'s initial disclosure of sexual misconduct and to the trial court's failure to conduct a balancing test under La.Code Evid. art. 403.

The prosecution posits that P.G.'s initial verbal disclosure and physical demonstration on the baby doll were close enough in time to the molestation to constitute an excited utterance admissible under La.Code Evid. art. 801 as well as an initial complaint of sexually assaultive behavior made by a child under the age of twelve admissible under La.Code Crim.P. art. 804(B)(5).

The State alleges P.G.'s young age (four years old) prevented her from being able to give a statement at the Children's Advocacy Center and from later being able to testify at trial.

The prosecution further urges this court to apply jurisprudence suggesting the rules of evidence should be relaxed in child sexual abuse cases. The prosecutor asks that, should this court find Mrs. Guillot and Ms. Hilton's testimonies to be inadmissible hearsay, this court should hold the error harmless since they

28

corroborated Detective Cammack's report of the complaint and since Defendant also testified he held P.G. like a baby and tickled her all over her body. The State contends that, had trial counsel raised the inadmissible hearsay objection at trial, the district court "would almost certainly" have allowed Mrs. Guillot and Ms. Hilton's testimonies.

The State responds to Defendant's assertion that his defense counsel should have required the trial court to perform the La.Code Evid. art. 403 balancing test before accepting Mrs. Guillot and Ms. Hilton's testimonies about P.G.'s initial disclosure by asserting the defense failed to establish ineffective assistance of counsel because it was a general and/or conclusory allegation. The State further argues that ineffective assistance of counsel claims on appeal should be relegated to post-conviction relief if they cannot be resolved based on the record.

*Analysis:*

"A claim of ineffectiveness is generally relegated to post-conviction proceedings, unless the record permits definitive resolution on appeal." *State v. Miller*, 99–192, p. 24 (La. 9/6/00), 776 So.2d 396, 411, *cert. denied*, 531 U.S. 1194, 121 S.Ct. 1196 (2001).

The Louisiana Supreme Court has recently restated the test for determining ineffective assistance of counsel:

> The United States Supreme Court provided the following standard for determining whether a conviction must be reversed because of ineffective assistance of counsel:
>
> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction

29

or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Except for unusual circumstances not present here, to obtain relief under *Strickland*, both deficient performance and prejudice must be established. The failure to prove either one is fatal to an ineffective assistance of counsel claim. . . .

*Strickland* provides the following standard for determining prejudice:

The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

In making the determination whether the specified errors resulted in the required prejudice, a court should presume, absent challenge to the judgment on grounds of evidentiary insufficiency, that the judge or jury acted according to law. An assessment of the likelihood of a result more favorable to the defendant must exclude the possibility of arbitrariness, whimsy, caprice, "nullification," and the like. A defendant has no entitlement to the luck of a lawless decisionmaker, even if a lawless decision cannot be reviewed. The assessment of prejudice should proceed on the assumption that the decisionmaker is reasonably, conscientiously, and impartially applying the standards that govern the decision. It should not depend on the idiosyncracies of the particular decisionmaker, such as unusual propensities toward harshness or leniency. Although these factors may actually have entered into counsel's selection of strategies and, to that limited extent, may thus affect the performance inquiry, they are irrelevant to the prejudice inquiry. Thus, evidence about the actual process of decision, if not part of the record of the proceeding under review, and evidence about, for example, a particular judge's sentencing practices, should not be considered in the prejudice determination.

The governing legal standard plays a critical role in defining the question to be asked in assessing the prejudice from counsel's errors. When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.

*Strickland*, 466 U.S. at 694–95, 104 S.Ct. at 2068–69. The following guidance is particularly pertinent here:

In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and

some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with *overwhelming* record support. Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors.

*Strickland*, 466 U.S. at 695–96, 104 S.Ct. at 2069.

*State v. Chandler*, 22-1506, pp. 3–5 (La. 5/5/23), 362 So.3d 347, 350–51.

"[C]ounsel's decisions as to when to object . . . form a part of trial strategy."

*State v. Ball*, 19-1674, p. 7 (La. 11/24/20), 305 So.3d 90, 96 (citing *State v. Hoffman*, 98-3118 (La. 4/11/00), 768 So.2d 542, *supplemented*, 00-1609 (La. 6/14/00), 768 So.2d 592, *cert. denied*, 531 U.S. 946, 121 S.Ct. 345 (2000)). The supreme court has held that reviewing courts will not second guess a defendant's attorney in regard to trial strategy:

The *Strickland* test of ineffective assistance affords a "highly deferential" standard of review to actions of counsel to eliminate, as far as possible, "the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*[,] 466 U.S. at 689, 104 S.Ct. at 2065. This Court therefore "does not sit to second-guess strategic and tactical choices made by trial counsel." *State v. Myles*, 389 So.2d 12, 31 (La.1979).

*Hoffman*, 768 So.2d at 579.

Defense counsel's argument is that trial counsel should have objected to the testimonies of Mrs. Guillot and Ms. Hilton because, since P.G. did not testify at trial, their testimonies of P.G.'s initial complaint of sexually assaultive behavior constitute inadmissible hearsay. Had P.G. testified at trial and had Mrs. Guillot's and Ms. Hilton's testimonies about P.G.'s initial complaint of sexually assaultive behavior been consistent with her trial testimony, their testimonies would not be considered hearsay under La. Code Evid. art. 800(D)(1)(d).

The defense further asserts that trial counsel should have objected to the testimonies of Mrs. Guillot and Ms. Hilton as inadmissible hearsay because nothing on the record specifically shows the trial court ruled P.G. unavailable to testify. "'Hearsay' is a statement, other than one made by the declarant while testifying at the present trial . . . offered in evidence to prove the truth of the matter asserted." La. Code Evid. art. 801(C). In general, "[h]earsay is not admissible except as otherwise provided by this Code or other legislation." La.Code Evid. art. 802. Hearsay testimony about a prior statement made by a declarant is admissible when the declarant is unavailable as a witness, and when that declarant was under the age of twelve, and when the statement was "one of initial or otherwise trustworthy complaint of sexually assaultive behavior." La.Code Evid. art. 804(B)(5). Relevant to the instant case, a declarant can be unavailable to testify at trial due to physical or mental illness, infirmity, or other sufficient cause. La.Code Evid. art. 804(A)(4).

Defendant's contention is that trial counsel should have raised a foundational objection to Mrs. Guillot and Ms. Hilton's testimonies. The evidence at trial shows that P.G. was four at the time of the incident and five at the time of trial. Though P.G. was present at trial, she did not testify. The testimony at trial further established that, since the incident, P.G. had been plagued with trauma-induced mental and physical disorders requiring regular therapy. The record showed that, though P.G. had made some progress through her therapy, she was still not completely well. However, there is no recorded motion by the State asking the trial court to rule P.G. to be unavailable to testify at trial, and there is no finding by the district court making such a finding.

Thus, we find that the record contains information indicating P.G. may have been available, but the P.G.'s ongoing mental state indicated P.G. may have been unavailable to testify. Because evidence is required to make a determination of

32

P.G.'s availability to testify at trial, this court does not have enough in the record, at this time, to review Defendant's claim that he was denied effective assistance of counsel for his attorney's failure to object to P.G. not testifying at trial or to allowing Mrs. Guillory and Ms. Hilton to testify regarding P.G.'s initial complaint of sexually assaultive behavior based on P.G.'s failure to also testify at trial.

Furthermore, even though the testimonies of Mrs. Guillot and Ms. Hilton about P.G.'s disclosure were inadmissible hearsay without P.G.'s testimony or a finding of P.G.'s unavailability, Defendant's trial counsel's decision to refrain from objecting could have been trial strategy. There are a number of possible reasons why defense counsel may have made the decision. For example, trial counsel may have believed that the district court would have ruled P.G. unavailable to testify and that the necessary interview with P.G. to make the ruling would have negatively impacted Defendant's case. Another such example would be if Defendant's trial attorney intended to attack P.G.'s credibility as well as that of Mrs. Guillot and Ms. Hilton on cross-examination. A third such example would be if the defense lawyer thought Defendant's testimony would have more credibility with the trial court than second and third-hand accounts of what a four-year-old said. There also could be other reasons for the attorney's decision. However, since we find the current record is not sufficient, this court would have to speculate in order to rule on the validity of the reasoning behind Defendant's trial counsel's strategy.

As previously mentioned, the defense provides no analysis for the claims that trial counsel denied Defendant effective assistance by failing to require the district court to verbally conduct the La.Code Evid. art. 403 balancing test on the record before permitting Mrs. Guillot and Ms. Hilton to testify about P.G.'s first report. "All assignments of error and issues for review shall be briefed. The court may deem as

33

abandoned any assignment of error or issue for review which has not been briefed." Therefore, this court considers those claims abandoned for failure to brief.

Thus, we find the issue is best resolved on collateral review, wherein both parties are afforded the opportunity to present evidence as to this issue; thus, we relegate this claim to post-conviction relief.

Considering the above facts, law and analysis, we therefore relegate to post-conviction relief Defendant's ineffective assistance of counsel claim regarding trial counsel's failure to require the trial court to rule on P.G.'s availability to testify at trial. Further, we find Defendant's ineffective assistance of counsel claim regarding trial counsel's failure to require the trial court to perform a La.Code Evid. art. 403 balancing test in relation to the testimonies of Mrs. Guillory and Ms. Hilton to have been abandoned for failure to brief the issue.

## DECREE

We affirm Defendant's convictions, relegate to post-conviction relief Defendant's ineffective assistance of counsel claims, and affirm Defendant's sentences. The trial court is directed to order an amendment of the Uniform Commitment Order to correctly reflect that the sentences imposed are to be served at hard labor, without benefit of probation, parole, or suspension of sentence.

**AFFIRMED AND REMANDED, WITH INSTRUCTIONS.**